## STATE v. LLOYD A. FRY ROOFING COMPANY.

158 N. W. (2d) 851.

May 10, 1968—No. 40,924.

*Shanedling, Phillips, Gross & Aaron,* for appellant.

*Keith M. Stidd,* City Attorney, and *Edward R. Kenneally,* Assistant City Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

Appeal from an order denying a motion for a new trial.

Defendant, Lloyd A. Fry Roofing Company, operates a large factory which manufactures asphalt roofing materials. It is located near other industrial plants in an area in North Minneapolis zoned for heavy industries. In 1947, when its original plant occupying less than a half a block was built, there were few neighboring houses, but at present a solid residential community, including a new school, surrounds the plant, enlarged now to occupy over two blocks. Incident to its manufacturing process, the plant emits large quantities of smoke, a heavy asphalt odor, and particles of mica. On August 12, 1966, in response to a complaint, a technician from the Air Pollution Control Commission of Minneapolis went to the company's plant. He found on that day the plant was emitting, among other foreign materials, an unusually heavy and

very obnoxious asphalt odor. He therefore issued a tag for violation of Minneapolis Code of Ordinances, § 180.110, which provides in part:

"No person shall cause, suffer, or allow to be emitted into the open air any foreign materials such as dusts, gases, fumes, vapors, smokes, and odors in quantities which, by reason of their objectionable properties, shall be considered a nuisance because they do one or more of the following:

\* \* \* \* \*

"2. Create an obnoxious odor in the atmosphere."

Defendant was tried and convicted and now appeals, claiming only that the evidence was insufficient to sustain the jury's verdict of guilty.

Numerous witnesses testified that on August 12 the defendant company's plant emitted, among other things, large quantities of dense smoke and mica from its smoke stacks, creating an obnoxious odor in the residential neighborhood affecting the health of the residents. Thus the essential finding that the roofing company did in fact pollute the atmosphere so as to substantially interfere with the health and comfort of the residents as charged is amply supported by the evidence and is not in dispute. It is, however, contended by defendant that, as set out in the court's charge, an essential element which the state must prove is that the defendant has not done as much as is reasonably possible to operate its facilities in a manner which would reduce the amount of pollution emitted to a minimum. This contention is correct,[1] for, as requested by defendant, the court instructed the jury:

"Now, the essential elements of the charge which the State must prove beyond a reasonable doubt are that Fry Roofing Company was \* \* \* discharging emissions into the air, constituting a nuisance \* \* \*. A nuisance may be defined as the maintaining or permitting a condition which unreasonably annoys \* \* \* any considerable number of members of the public. \* \* \*

---

[1] While Minnesota has not ruled on the question of whether this is an essential element of criminal nuisance, other states have so held. E. g., People v. Dayton Cleaners & Dyers Corp. 251 App. Div. 332, 296 N. Y. S. 129; State v. Collingswood Sewerage Co. 85 N. J. L. 567, 89 A. 525.

"Now, the residents living in the vicinity of an objectionable activity are to be protected against a material and substantial interference with their ordinary physical comfort. * * * [T]he residents are entitled only to have the substantial and material phase of the interference removed so that they will suffer discomforts no greater than those ordinarily incident to life in many sections of every city.

"* * * Residents there cannot expect the same relative freedom from smoke, dust, cinders, noise and other industrial irritations generally enjoyed by those living in residential areas. * * *

"Ordinarily, the fact that an industry is being operated under methods best calculated to remove the conditions causing the inconvenience is convincing indication that whatever annoyance is being suffered by those living there is only such as is inescapably present in that area. Though negligence upon [the] part of defendant need not be proved, whether defendant was doing as much as reasonably was possible in the way of careful operation becomes the measure of whether there has been substantial interference with the neighboring residents' enjoyment of life. The cost of a change, the probability of betterment and the effect upon performance are all factors which any industry may consider in determining whether to experiment with devices other than those now in use."

The court's charge, as requested and given, was obviously taken from Jedneak v. Minneapolis General Elec. Co. 212 Minn. 226, 4 N. W. (2d) 326. Even though in our opinion that case does not support defendant's contention that as an essential element of the offense the state was required to prove improper operation or control, the language of the charge fairly construed does so require, and there being no objection by the parties, the charge became the law of the case.

Defendant therefore argues that a new trial should be ordered since there is not sufficient evidence to sustain a finding that it had not done as much as reasonably possible to operate in a proper manner. We do not agree. Edward Wiik, an expert in air pollution control whose qualifications and experience as an engineer in this field are not disputed, gave his opinion, based on his personal inspection of defendant's operation, that with the proper reasonable steps the problem could be con-

trolled. He indicated that there were various types of approaches, such as the installation of a "scrubber," that might be used by defendant, with the initial cost of such controls ranging from approximately $50,000 to $250,000. Defendant asserts that this opinion should be disregarded because Wiik did not have a proper factual basis for forming such an opinion. It is claimed that he had formed this opinion solely because three other similar plants throughout the country had controlled their air pollution problem. Since Wiik admittedly never visited these plants, this would not have been an adequate foundation for his opinion. Sanchez v. Waldrup, 271 Minn. 419, 136 N. W. (2d) 61. However, this was not the only basis for his opinion. It was based on his experience and knowledge as a mechanical engineer, his experience gained from working with various air pollution programs and associations, the courses he took in a master's degree program at the University of Minnesota which dealt with air pollution, and his personal observations of the Fry Roofing Company plant. In our opinion, this constitutes a sufficient basis for his opinion. Even though its persuasive force was substantially reduced during cross-examination, the factual foundation rendering it admissible as evidence to be weighed and accepted or rejected by the jury remained. See, e. g., Independent School Dist. No. 35 v. A. Hedenberg & Co. Inc. 214 Minn. 82, 7 N. W. (2d) 511. Defendant did not object at trial that the opinion lacked sufficient foundation, nor did defendant submit any expert or other testimony to challenge Wiik's opinion that the interference could be controlled. In addition, the technician employed by the Air Pollution Control Commission, who, after inspection, issued the tag to defendant, testified that the adjacent Trumbull Asphalt Company, which is subject to similar air pollution problems, has taken measures to control emissions by taking their gases "from the saturator * * * underground, * * * condensing most of it" and the "droplets which don't condense they take to a boiler and they burn them," emitting into the atmosphere "a gassy odor" which does not contain the "heavy, oppressive, nauseating smell" emitted by defendant's plant.

Affirmed.