R. L. TOWNS et al., Appellees, v. CITY OF SIOUX CITY, Appellant.

No. 41130.

MARCH 8, 1932.

Ralph A. Oliver, A. O. Jepson, and Milchrist, Schmidt, Marshall & Jepson, for appellant.

Hays, Baron & Mathews, for appellees.

ALBERT, J.—One R. L. Towns is engaged in the operation of two motor vehicles as a common carrier of freight for hire in the City of Sioux City, not between fixed termini or regular routes. The other plaintiff is an association of transfer men (incorporated) with nine members, all of whom are engaged in a business similar to that of Towns.

 The ordinance in controversy was passed by the defendant City in 1911. It consists of 37 sections, many of which are obsolete, and others which have been repealed by later enactments of the legislature. The title to the act is "An ordinance licensing and regulating hacks, carriages, taxicabs, automobiles and other vehicles kept for hire."

Section 1. "License required. No person or persons shall

hire out, or keep, or use for hire upon the streets of the city of Sioux City, any vehicle of any description whatever, either for the conveyance of passengers or the conveying or transportation of goods, wares, merchandise or other articles, from place to place within said city, without a license so to do.''

Section 2 provides who may obtain licenses; section 3 applies to license plates; section 4 to the lights and numbers; section 5 for owner's liability for violation of this ordinance; section 6 for badges to be worn on the caps of drivers; section 7 for transfer of licenses; section 8 for license fees. Subdivision 10 of section 8 reads as follows:

''All automobiles that shall operate within the city for the conveyance of passengers, or for the conveyance of baggage, goods, wares or merchandise for hire or reward, shall be charged for license each the sum of fifteen dollars per annum.''

Section 11 provides that each driver of an automobile which shall be run for the conveyance of passengers or for the conveyance of baggage, goods, wares or merchandise, for hire or reward within the city, shall be charged for license two dollars per annum.

Subdivision 14 of the above section provides that motor-driven vans shall each be charged a license of eighteen dollars per annum.

Section 10 provides the rates or fares to be charged by each of the various kinds of conveyances.

Other sections of this ordinance have no bearing on the question raised.

Aside from the question hereafter referred to, as to whether this ordinance was a license measure or a tax measure, it must be conceded that the city had the power to pass said ordinance under section 754, Code, 1897, which is now section 5970, Code, 1931, reading as follows:

''Conveyances—transportation. They [cities and towns] shall have power:

''1. To regulate, license, and tax all carts, wagons, street sprinklers, drays, coaches, hacks, omnibuses, and every description of conveyance kept for hire.

''2. To fix the rate and prices for the transportation of

persons and property from one part of the city to another in the vehicles above named, and to require such persons to keep exposed to view, in or upon such vehicle, a printed table of the rates and prices so fixed.

"3. To establish stands for hackney coaches, cabs, omnibuses, drays, and express wagons, and to enforce the observance and use thereof.

"4. To prescribe the width of the tires of all vehicles habitually used in the transportation of persons or articles from one part of the city to another.

"5. To require vehicles and bicycles to carry lamps giving sufficient light."

The right of the city to levy a tax as provided in the above-quoted section was taken away by legislation in 1919. It is insisted, however, that the right to license provided for in the above section was taken away by reason of the enactment of Chapter 129 of the laws of the 43d G.A., which appears in the present code as Chapter 252-C1. This act is too long to set out in full in this opinion, but it is entitled:

"An act to provide for the supervision and regulation, by the board of railroad commissioners of this state, of all persons engaged in the public transportation of property for hire by motor vehicles not operating between fixed termini nor over a regular route and for the enforcement of this act and punishment for the violation of the provisions thereof and to provide for the levy and collection of a permit fee to be paid by such truck operators for the administration and enforcement of the provisions thereof."

The following sections are a part thereof:

"Section 1. When used in this act.

"1. The term 'motor truck' shall mean any automobile, automobile truck, or other self-propelled vehicle, not operated upon fixed rails or track, but principally used for the public transportation of freight for compensation, not operating between fixed termini, nor over a regular route.

"2. The term 'truck operator' shall mean any person operating any motor truck or motor trucks upon any highway in this state.

"3. The term 'highway' shall mean every street, road bridge, or thoroughfare of any kind in this state.

"4. The term 'commission' shall mean the board of railroad commissioners of this state.

"Section 2. The commission is hereby vested with power and authority and it shall be its duty to:

"1. Require a periodic inspection of the equipment of every truck operator and said equipment shall be subject at all times to inspection by the commission or its duly authorized representatives.

"2. Fix or approve the rates, charges, classifications, and rules and regulations pertaining thereto, of each truck operator, after complaint has been filed in accordance with rules established by the commission.

"3. Regulate and supervise the service and safety of operation of each truck operator.

"4. Require the filing of annual and such other reports as it may deem necessary.

"5. Supervise and regulate truck operators in all other matters affecting the relationship between such truck operators and the traveling and shipping public.

"Sec. 3. The commission shall also have power and authority by general or special order to prescribe rules and regulations applicable to any and all truck operators.

"Sec. 4. All control, power, and authority over railroads and railroad companies, motor vehicles and motor carriers now vested in the commission, in so far as the same are applicable, are hereby specifically extended to include truck operators."

Section 5 governs charges to be made for transportation of property.

Section 6 reads as follows:

"It is hereby declared unlawful for any truck operator to operate or furnish public service within this state without first having obtained from the commission a permit as hereinafter defined."

Section 7 provides for an application for such permit; sections 8 and 9 for the issuance thereof and the fee to be paid, which is fixed at five dollars; section 10 provides that on the failure to pay the fee the permit may be revoked.

Sections 11 and 12 read as follows:

"The commission shall, on the last day of each month, remit to the treasurer of state all moneys collected under this act during such month.

"All moneys received under the provisions of this act or so much thereof as may be necessary shall be used for the administration and enforcement of the provisions of this act and the regulation of truck operators, and shall be paid to the commission by warrant drawn from time to time by the auditor of state upon the treasurer of state. Unexpended balances shall be credited to the general fund of the state."

Section 13 makes said permit personal property and transferable; section 14 provides that before a permit is issued, the applicant must put up an insurance policy or surety bond, etc.; section 15 provides for a revocation of the permit under certain circumstances; section 16 provides for the equipment of the truck and the inspection thereof; section 17 provides the qualifications of a driver of a truck and that he must have a regular chauffeur's license; section 18 provides that the width over all on said truck shall not exceed eight feet; section 19 has various provisions as to signal equipment, lights, etc.; section 20 provides for a rear vision mirror; section 21 for the reporting of accidents; section 22 for distinctive markings of trucks; section 23 provides that the commission shall promulgate safety rules and regulations necessary to govern the operation and control of motor trucks on the highways, and the maintenance and inspection thereof; section 24 provides for the revocation and cancellation of the permit under certain conditions; section 26 provides punishment for violation of any of the orders, rules, decisions or regulations, direction, demands or requirements of the commission, etc.; section 27 provides for the independence of each section in the act in case of a constitutional attack.

It is the claim of the appellees that by the passage of the Act of the 43d G.A. just described, the power of the city to license, under section 5970 first set out, was nullified by implication; hence this ordinance is void.

It is conceded this ordinance is limited in its operation to the purlieus of the municipality of Sioux City; in other words, it is admitted this ordinance is ineffective as against truckers

whose business is not confined to the municipality of Sioux City. There is no claim that truckers whose habitual business is hauling in and out of Sioux City are amenable to this ordinance, and it is the claim of the appellees at this point that all power of the city to license and regulate motor vehicles of this sort was taken away by this Act of the 43d General Assembly. This, as we understand it, is the crux of appellees' contention.

There is no specific provision in Chapter 252-C1 taking away this power of license from the city, and if it has lost such power it must be because, by implication, Chapter 252-C1 deprived the city of such power, in that the provisions of the ordinance conflict with the aforesaid chapter of the code, hence are void, and of no effect because of such conflict. Implied repeals are not favored by the courts. Casey v. Harned, 5 Iowa (Clarke) 1; Burke v. Jeffries, 20 Iowa 145; City of Fairfield v. Shallenberger, 135 Iowa 615; Eckerson v. City of Des Moines, 137 Iowa 452.

But while courts do not favor repeal by implication, at the same time where there is a square conflict, the rights of the superior jurisdiction will prevail, and where a city ordinance conflicts squarely with the laws of the state, the law of the state must prevail.

To visualize this situation, one who wishes to operate a motor truck in Iowa for the carrying of merchandise for compensation under Chapter 252-C1 must first procure the regular license plates from the state under Chapter 251 of the Code of 1931, sections 4913 to 4919, inclusive, for which he must pay per annum (depending upon the capacity and equipment of the truck) from fifteen to three hundred fifty dollars or more if it exceeds six-ton capacity. He then must make application, under Chapter 252-C1, for a permit, and pay the railroad commissioners five dollars on the issuance thereof, after putting up the bond as provided in said chapter. After he has procured license plates, he must procure a chauffeur's license for each driver, and then, if this ordinance is valid, he must comply with the provisions thereof, and pay the license fees therein provided, before he may operate as a motor truck carrier exclusively within the limits of the defendant city. The question at this point is: Is there such a conflict between the ordinance and Chapter

252-C1 that this court may say that the ordinance is void because of such conflict?

To one interested in investigating this question in its larger phases, much light will be found in the following cases: State ex rel. Wells v. City of Charleston, 115 S. E. (W. Va.) 576; Parker v. City of Silverton, 220 Pac. (Ore.) 139; Mancusco v. Yellow Taxicab Co., 203 N. W. (Mich.) 875; State ex rel. Knese v. Kinsey, 282 S. W. (Mo.) 437; City of Bridgeton v. Zellers, 124 Atl. (N. J.) 520; Cutrona v. Mayor and Council of Wilmington, 124 Atl. (Del.) 658; Westlake v. Cole, 241 Pac. (Okla.) 809; Lidfors v. Pflaum, 236 Pac. (Ore.) 1059; Ex parte Wilchar, 278 S. W. (Texas) 850; Ex parte Mooney, 291 S. W. (Texas) 246; Northern Texas Traction Co. v. Weed, 297 S. W. (Texas) 534; City of Portsmouth v. Miller, Rhoads & Swartz, 121 S. E. (Va.) 891; International Motor Transit Co. v. City of Seattle, 251 Pac. (Wash.) 120; State v. Robinson, 123 S. E. (W. Va.) 575; Mendel v. Dorman, 258 S. W. (Ky.) 936; State v. Stallings, 126 S. E. (N. C.) 187; Sims v. Martin, 126 S. E. (Ga.) 872; Whyte v. City of Sacramento, 224 Pac. (Cal.) 1008; Young & Jones v. Town of Campbellsville, 250 S. W. (Ky.) 979; Jefferson Highway Transportation Co. v. City of St. Cloud, 193 N. W. (Minn.) 960; State ex rel. City of Bozeman v. Police Court, 219 Pac. (Mont.) 810; Seldney v. Bennell, 118 Atl. (N. J.) 699; Lamar & Smith v. Stroud, 5 S. W. (Texas) (2d Series) 824.

It might be well to analyze these statutes to better determine the question before us. A study of Chapter 252-C1 leads to but one conclusion as to the permit therein provided for. In the light of sections 11 and 12 of said act, but one conclusion must be drawn, and that is that the amount paid for said permit was purely a privilege or occupation tax on the party for using the public highways as a place of business.

It has been well settled that no person has the inherent right to use the public highways of the state as a place of business. Huston v. City of Des Moines, 176 Iowa 455; Cutrona v. Mayor and Council of Wilmington, 124 Atl. (Delaware) 658; Greene v. City of San Antonio, 178 S. W. (Texas) 6; Schoenfeld v. City of Seattle, 265 Fed. 726; Cummins v. Jones, 155 Pac. (Ore.) 171; Frick v. City of Gary, 135 N. E. (Ind.) 346; Dent v. Oregon City, 211 Pac. (Ore.) 909; Ex parte Dickey, 85 S. E. (W. Va.) 781; Harris v. Atlantic City, 62 Atl., (N. J.) 995.

In other words, the general public is entitled to the free use of the highways, but this right and privilege does not include the right to use such public highways as a place for private business. The state undoubtedly has the right,—and in many instances has prohibited,—the use of the highways and streets as a place for private business. The charge for the rights conferred by the permit provided for in Chapter 252-C1 of the Code is therefore a charge for the privilege or right to do business on the public highways of the state under certain conditions and limitations, and is, therefore, purely and simply a privilege or occupation tax, and not a license in the ordinary sense and use of that term. We had occasion to discuss this phase of the case in Solberg v. Davenport, 211 Iowa 612, and there cite authorities on this question.

Having reached the conclusion that Chapter 252-C1 provides only for a privilege tax for the use of the highways, including the streets of cities and towns, the question is whether the State, in so providing, has taken away the rights of cities and towns under section 5970 above set out. In determining whether or not there is a conflict between this ordinance and Chapter 252-C1, the general test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits. Schneiderman v. Sesanstein, 167 N. E. (Ohio) 158.

An analysis of Chapter 252-C1 shows that the railroad commission is vested with power and authority and it is its duty to: (1) require periodic inspection of the equipment; (2) when complaint is made, to fix or approve the rates, charges and classifications of each truck operator; (3) to regulate and supervise the service and safety of the operation of each truck operator; (4) to require the operator to file annual reports; (5) to supervise and regulate truck operators in all other matters affecting the relationship between such truck operator and the traveling or shipping public. Section 5105-c2.

The next section confers upon the commission the power and authority, under general or special orders, to prescribe rules and regulations applicable to any and all truck operators. Subsequent sections provide for the procurement of a permit to "operate or furnish public service within this state."

Section 5105-c9 provides that such truck operator shall pay

an annual fee of five dollars for his permit. Later sections provide for the accounting and disposition of fees received by the commissioners, the nature of the permit and its revocation, the size of the load, the signal equipment, and other equipment of the car and the markings thereon; and section c23 provides that they may promulgate such other safety rules and regulations as may be deemed necessary to govern and control operation of motor trucks upon the highways and the maintenance and inspection thereof.

Subdivision 3 of section 1 of the Act provides that the term "highway" means every street, road, bridge, or thoroughfare of any kind in the state. There is no specific clause in this act repealing the right of the city to demand a license, nor does the act contain the provision so frequently used, in substance, that "all acts or parts of acts in conflict with this are hereby repealed."

It can not be doubted that under section 5970 of the Code power was conferred upon the city to enact such ordinance, in so far as the question of license is concerned. A careful study of Chapter 252-C1 leads us to the conclusion that the legislature had no intention, in the enactment thereof, to withdraw from the city its power to license under these circumstances. As above summarized, the commission's power and authority is limited, generally speaking, to the right of inspection, fixing of rates when complaint is made, the regulation and supervision of service and safety, and the supervision of the relations between the operator and his patron. Nothing in these sections or subsequent sections of the act indicates any intention to withdraw the right of the city to license under section 5970. As aiding us in reaching this conclusion, we call attention to the following cases: Borough of Applewold v. Dosch, 86 Atl. (Pa.) 1070; Seldney v. Bennell, 118 Atl. (N. J.) 699; Morristown-Madison Auto Bus Co. v. Borough of Madison, 88 Atl. (N. J.) 829; Jefferson Highway Transportation Co. v. City of St. Cloud, 193 N. W. (Minn.) 960; State v. Scheidler, 99 Atl. (Conn.) 492; Ex parte Holt, 178 Pac. (Okla.) 260; People v. Thompson, 173 N. E. (Ill.) 137.

The appellees at this point rely largely on the case of Chicago Motor Coach Co. v. City of Chicago, 169 N. E. (Ill.)

22. A study of this case shows, however, its inapplicability. The opinion states the question to be:

"Has the city the power to prohibit the operation on its streets of motor busses, as common carriers of passengers, by a public utility which has obtained a certificate of public convenience and necessity for such operation from the Illinois Commerce Commission?"

The conclusion we reach, therefore, is that there is no conflict between the powers exercised in enacting said ordinance and those given the railroad commission under Chapter 252-C1 of the Code.

It is urged in addition that the ordinance is unreasonable and excessive in amount, and, therefore, amounts to a taxing measure, instead of the exercising of the power of license. It is quite well settled that when an ordinance of this kind is passed by a municipality under a grant of power, the fee fixed by the municipality is reasonable unless the contrary appears from the ordinance itself or is shown by proper evidence. City of Burlington v. Putnam Insurance Co., 31 Iowa 102; State v. Hammond Packing Co., 34 So. (La.) 368; State ex rel. City of Bozeman v. Police Court, 219 Pac. (Mont.) 810; Cincinnati Gas Light & Coke Co. v. State of Ohio, 18 Ohio State 237; Arms v. Ayer, 61 N. E. (Ill.) 851.

We see nothing on the face of this ordinance which indicates that the license fee is unreasonable, and there is not sufficient evidence before us to warrant our saying that the same is so unreasonable that it should be held to be a tax measure instead of a license measure. While the ordinance in question was passed many years ago, when most all traffic was horse-drawn, and there are many provisions therein which are obsolete or which have been repealed by statute, this question of the licensing of one who is conducting a dray or motor truck business is, in our judgment, still valid and will stand, as it is not so interwoven with other parts of the ordinance which are repealed or obsolete, as to call for a holding that the whole ordinance is void.—Reversed.

WAGNER, C. J., and STEVENS, FAVILLE, DE GRAFF, KINDIG, MORLING, GRIMM, and EVANS, JJ., concur.