# STATE v. LLOYD A. FRY ROOFING COMPANY.

246 N. W. 2d 692.

October 22, 1976—No. 46094.

*Shanedling, Phillips, Gross & Aaron, Bert Gross,* and *Richard T. Wylie,* for appellant.

*Walter J. Duffy, Jr.,* City Attorney, and *Edward C. Vavreck,* Assistant City Attorney, for respondent.

TODD, JUSTICE.

Lloyd A. Fry Roofing Company (Fry) was convicted in Hennepin County Municipal Court of five separate violations of Minneapolis Code of Ordinances, § 180.015,[1] prohibiting emissions which create a nuisance, and was fined a total of $1,000. On appeal to the Hennepin County District Court the convictions were affirmed. Fry contends that in a criminal nuisance prosecution the state must establish the defendant's intent to commit the alleged nuisance and its failure to do all it reasonably could to avert the alleged nuisance, and that therefore the evidence does not justify the convictions in this case. We affirm.

Fry has owned and operated a plant for the manufacture of asphalt roofing materials in Minneapolis for almost 30 years. The operation of this plant has been the source of numerous complaints by the citizenry and public officials, resulting in much litigation.[2] In this case, Fry was charged with written complaints and convicted of violating Minneapolis Code of Ordinances, § 180.015, which provides in pertinent part as follows:

"No person shall cause, suffer or allow to be emitted into the open air any foreign materials such as rusts, gases, fumes, vapors, smokes and odors in quantities which, by reason of their objectionable properties, shall be considered a nuisance because they do one or more of the following:

\* \* \* \* \*

"2. Create an obnoxious odor in the atmosphere."

The five violations for which Fry was convicted occurred on August 7, 9, 13, 20, and 29, 1974, and concerned emissions from Fry's smokestack and the odor emanating therefrom. The state produced several witnesses, including individuals living and working in varying proximity to Fry's plant and employees of

[1] Minneapolis Code of Ordinances, § 180.015 has been recodified as Minneapolis Code of Ordinances, § 47.180, effective May 1, 1976.

[2] A 1966 conviction of Fry for violation of this same ordinance was affirmed by this court in State v. Lloyd A. Fry Roofing Co. 280 Minn. 265, 158 N. W. 2d 851 (1968).

the pollution control section of the Minneapolis Department of Inspections. The testimony indicated that on each day of the alleged violations an annoying and odoriferous plume of vapor or smoke, described with varying degrees of certainty as coming from Fry's smokestack, settled in residential or recreational areas surrounding the plant. The areas affected ranged from 4 square blocks to 1/2 square block.

Fry raises as legal issues on this appeal the following:

(1) Was the evidence sufficient to sustain Fry's convictions?

(2) Must the state prove, in a prosecution for a criminal nuisance, that the defendant intended to commit the alleged nuisance and failed to do all that it reasonably could to avert the alleged nuisance?

(3) Does a purported agreement with the city inspector to notify Fry prior to issuing any violation tags preclude the present prosecution?

■ We have carefully reviewed the transcript of the testimony in this case and affirm the determination by both courts below that the evidence more than amply sustains the convictions.

■ Fry contends that the mere fact that its emissions created "obnoxious odors" is not sufficient to establish a violation of the ordinance, in the absence of evidence that it specifically intended to generate such emissions, and that it failed to take all action reasonably possible to abate the objectionable emissions. The state contends that the ordinance should be enforced according to its plain terms, by which an obnoxious emissions is per se a violation, regardless of the intent of the party who causes the emission, and regardless of the steps that party may have taken to avert it. Both of the lower courts accepted the state's position. Even though the district court actually commended Fry for its "heroic efforts" to eliminate the emission problem, it nevertheless concluded as a matter of law that "a good faith, honest attempt at trying to eradicate the problem, but failing to do so, is not a defense."

We are in accord with the decisions of the lower courts on this

issue. Initially, it must be recognized that a legislative body has the power to define crimes without requiring any criminal intent or motive as an element thereof. See, e. g., Chicago, B. & Q. Ry. v. United States, 220 U. S. 559, 31 S. Ct. 612, 55 L. ed. 582 (1911); United States v. Hart Motor Express, Inc. 160 F. Supp. 886 (D. Minn. 1958). The general rule regarding nuisances is that "it is immaterial how innocent the intent was for the element of motive or intent does not enter into the question of nuisance", so a state legislature may declare certain acts to be nuisances regardless of the intent with which they are carried out and even though they were not such at common law, or the legislature may delegate this authority to a municipal corporation. Joyce, Law of Nuisance, § 43, p. 77, and §§ 81, 84.

In asserting that a specific intent and failure to take all reasonable measures must be established as elements of a criminal nuisance, Fry fails to perceive the distinction between negligence and nuisance. This important distinction is highlighted by Prosser, Torts (4 ed.) § 87, p. 573:

"* * * [N]uisance is a field of tort liability, rather than a type of tortious conduct. It has reference to the interests invaded, to the damage or harm inflicted, and not to any particular kind of act or omission which has led to the invasion. * * * [N]egligence is merely one type of conduct which may give rise to a nuisance."

Negligence and nuisance are completely distinct concepts, and a defendant's failure to act reasonably, which is an essential element of the former, is simply not relevant to the latter. As a leading authority on nuisance law explained:

"Negligence of the defendant is not ordinarily an essential element in an action for damages sustained by reason of a nuisance. The action is founded on the wrongful act in creating or maintaining it, and the negligence of the defendant, unless in exceptional cases, is not material. So, as a general rule, the question of care or want of care, is not involved in an action for injuries resulting from a nuisance; and the exercise of reasonable care

in the creation or maintenance of a nuisance can never be an absolute defense to an action for an injury occasioned thereby." Joyce, Law of Nuisance, § 44, p. 80.

While intent and the failure to act reasonably are not essential elements of common-law nuisance violations, they are even less relevant to nuisances which are codified in statutes or ordinances. Dean Prosser states that when a public nuisance is "marked out by statute, * * * it is not necessary for the court to look further than the legislative declaration that the conduct is a criminal offense," and designates such nuisances as "absolute" or "per se", in that neither the care exercised by the defendant nor other particular attendant circumstances are relevant to the offense. Prosser, Torts (4 ed.) § 87, pp. 576, 582. Of course, an outer limit is placed upon a state's or municipality's declaration of a nuisance by the constitution. See, 1 Harper & James, Law of Torts, p. 85. However, there can be no contention that the ordinance at issue here violates any constitutional provision. An earlier decision by this court specifically held, in rejecting a constitutional challenge to such an ordinance, that "[t]he emission of dense smoke into the atmosphere in populous cities may be declared, by the legislative department, a public nuisance, and prohibited." State v. Chicago, M. & St. P. Ry. Co. 114 Minn. 122, 126, 130 N. W. 545, 547 (1911). This court concluded in that case, in view of an ordinance passed by the Minneapolis City Council declaring the use of soft coal in railroad engines to be a public nuisance, that the emission of dense smoke by switch engines in yards extending through a densely populated part of the city was a nuisance per se. 114 Minn. 130, 130 N. W. 548. A similar conclusion is warranted from Fry's violation of Minneapolis Code of Ordinances, § 180.015, in the present case.[3]

[3] For other Minnesota nuisance cases rejecting the defense of due care, see, e. g., H. Christiansen & Sons, Inc. v. City of Duluth, 225 Minn. 475, 31 N. W. 2d 270 (1948); Johnson v. City of Fairmont, 188 Minn. 451, 247 N. W. 572 (1933); Lynch v. Shiely, 131 Minn. 346, 155 N. W. 390 (1915).

■ Finally, Fry's contention regarding a purported agreement with the city to the effect that the city council notify Fry of complaints prior to issuing violation tags is without merit. We are in accord with the district court's conclusion that such an agreement could not be binding upon the city or validly circumscribe the city's power to issue criminal complaints.

Affirmed.