CITY OF COUNCIL BLUFFS, a
Municipality, Appellant,

v.

Lyle CAIN, Appellee.

No. 83–94.

Supreme Court of Iowa.

Dec. 21, 1983.

Richard B. Wade, Council Bluffs, for appellant.

Lyle A. Rodenburg, Council Bluffs, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and McGIVERIN, JJ.

HARRIS, Justice.

Defendant owns a forty acre farm which has been the property of his family for more than seventy-five years. The farm is within the corporate limits of the city of Council Bluffs. Since prior to the time the farm was annexed to the city, defendant and his family have conducted a horse

breeding business there, a business in which defendant continues to be engaged.

In 1982 the city passed an ordinance, Council Bluffs, Ia., Municipal Code §§ 4.20.280–4.20.410 (1982), which in part imposed a number of regulations on the keeping of farm animals. Section 4.20.280 requires anyone who keeps farm animals inside the city limits to obtain a permit and pay a $25 licensing fee. The permit may be obtained only after an inspection for compliance with the sanitation regulations set out in other sections of the ordinance. Those regulations deal with manure removal, fences, animal populations, feeding conditions, feed storage, and minimum distances from residences.

Defendant did not obtain a permit and was charged with violating section 4.20.-280, a simple misdemeanor. The magistrate dismissed the charge, finding the ordinance unconstitutional. On appeal the district judge affirmed the magistrate's judgment. On the city's application we granted discretionary review.

■ I. We first consider defendant's contention that farm animal control cannot be the subject of a municipal ordinance. Defendant thinks the city lacks the power to regulate farm animals because the subject has been preempted by state law. It is a well established principle that municipal governments may not undertake to legislate those matters which the legislative branch of state government has preserved to itself. There are alternative ways for a state legislature to show such a preservation. One is of course by specific expression in a statute. Another is, as defendant suggests, by covering a subject by statutes in such a manner as to demonstrate a legislative intention that the field is preempted by state law. See *City of Vinton v. Engledow*, 258 Iowa 860, 867, 140 N.W.2d 857, 861 (1966); 56 Am.Jur.2d *Municipal Corporations* § 375 (1971).

■ Cities are not necessarily precluded from enacting ordinances on matters which have been the subject of state statute. The traditional test has been whether an ordinance prohibits an act permitted by a statute, or permits an act prohibited by a statute. See *Towns v. City of Sioux City*, 214 Iowa 76, 84, 241 N.W. 658, 662 (1932). In the past, even if an ordinance passed this test it could be invalidated if the municipality was not expressly empowered by the state to enact it. See *Dotson v. City of Ames*, 251 Iowa 467, 470–72, 101 N.W.2d 711, 713–14 (1960); *Merriam v. Moody's Executors*, 25 Iowa 163, 170 (1868).

■ Iowa has since adopted the home rule constitutional amendment. See Iowa Const. art. III, § 38A. See also Iowa Code § 364.2(2) and (3) (1983). Under home rule, a city has the power to enact an ordinance on a matter which is also the subject of statute if the ordinance and statute can be harmonized and reconciled. *City of Iowa City v. Westinghouse Learning Corp.*, 264 N.W.2d 771, 773 (Iowa 1978); *Chelsea Theatre Corp. v. Burlington*, 258 N.W.2d 372, 373 (Iowa 1977); *Airport Commission for City of Cedar Rapids v. Schade*, 257 N.W.2d 500, 505 (Iowa 1977); *Green v. City of Cascade*, 231 N.W.2d 882, 890 (Iowa 1975).

■ We think the ordinance challenged here easily can be harmonized with state law. To be sure there are extensive state regulations and licensing provisions for farmers who keep or breed livestock. See Iowa Code ch. 162 (registration of animals); chs. 163–166C (prevention of disease among animals); section 163.26, *et seq.* (feeding garbage to animals); section 163.-40, *et seq.* (breeding bulls); ch. 167 (use and disposal of dead animals); ch. 188 (estrays and trespassing animals). See also Iowa Admin. Code ch. 11 (regulation of poultry and egg production); ch. 12 (dead animal disposal); ch. 16 (prevention of livestock diseases); chs. 30–31 (regulation of dairy production).

Nevertheless we find no statute or regulation expressly permitting what the challenged ordinance prohibits or expressly prohibiting the city from requiring a permit and fee for keeping farm animals within city limits. The city plainly holds the power to adopt a farm animal control ordi-

nance. Defendant's contention to the contrary is without merit.

■ II. Both the magistrate and the district judge found the ordinance is unconstitutional because it is an arbitrary, unreasonable, and capricious deprivation of property without due process of law, under both the state and federal constitutions. There is no dispute about the rule that, to be constitutional, an ordinance must have a definite, rational relationship to a legitimate purpose. *City of Cedar Falls v. Flett*, 330 N.W.2d 251, 255 (Iowa 1983). Defendant, however, has not established unconstitutionality on this ground. The ordinance is not one that can be found unreasonable on its face and defendant presents no record on which to base his contention.

■ A party who challenges an ordinance has the burden of proving it unconstitutional, and must negate every reasonable basis upon which the ordinance may be sustained. *Id.* at 254. This means that the challenger has the burden of producing the evidence, and persuading the court, of the ordinance's lack of a rational nexus with its supposed purpose. *Cf. Bartlett & Co. Grain v. Board of Review of the City of Sioux City*, 253 N.W.2d 86, 88 (Iowa 1977); *McDowell v. Town of Clarksville*, 241 N.W.2d 904, 908 (Iowa 1976).

■ We have held that an ordinance can be struck down if it is plainly unreasonable on its face. *See Iowa City v. Glassman*, 155 Iowa 671, 674, 136 N.W. 899, 901 (1912). But the attack on the ordinance here is poorly armed because there was no evidentiary showing. A contention of unreasonableness generally should not be addressed to the private views of judges; unreasonableness should appear from demonstrated or judicially noted facts. An evidentiary showing should be foregone only when a challenger is confident that the unreasonableness appears as a matter of law.

■ The need for production of testimony or other evidence stems from the judiciary's deference to the considered judgment of legislative bodies. A court's invalidation of an ordinance on the ground that it is not rationally related to its purported end is tantamount to substitution of the court's opinion for that of the legislative officials who enacted it. Courts endeavor to avoid this when unreasonableness is not clearly demonstrated. *See MRM, Inc. v. City of Davenport*, 290 N.W.2d 338, 343 (Iowa 1980); *Adams v. Bonacci*, 287 N.W.2d 154, 156 (Iowa 1980). If reasonableness of the ordinance's nexus to its purported end is fairly debatable, it must be allowed to stand. *See Business Ventures, Inc. v. Iowa City*, 234 N.W.2d 376, 381 (Iowa 1975); *Brackett v. City of Des Moines*, 246 Iowa 249, 260, 67 N.W.2d 542, 547 (1954).

■ Of course courts are not blind to obvious facts that were persuasive to legislators in voting for or against a measure. They are within judicial scrutiny and can be weighed in the determination of a due process challenge. *See* C. Antieau, Modern Constitutional Law § 15:38 (1969). Courts are often asked to, and frequently do, take judicial notice of these facts. But there is risk for a challenger of a provision who fails to develop a record of the facts which were judicially noted.

Judicial notice at any level has dangers of injustice, but when a lawyer defending his client against charges of crime must at trial guess what Justices of the Supreme Court will secretly judicially notice on appeal, the task of the advocate becomes almost impossible.... When a trial court takes judicial notice of facts, it must inform counsel of this and give him a fair opportunity to show that the facts noticed are neither "common knowledge" nor correct. Neither the United States Supreme Court nor any appellate court should ever take judicial notice of any facts that might control constitutional adjudication without informing all counsel and sending the case back to the trial court to give counsel an opportunity to show the erroneous or irrelevant nature of the facts judicially noticed. For Supreme Court Justices to take judicial no-

tice of facts determinative of constitutional issues is to increase greatly the danger, in the words of Justices Holmes, that "the decision will depend on a judgment or intuition more subtle than any articulate major premise."

*Id.* (footnotes omitted).

■ After the challenger of an ordinance produces evidence, the city should, but is not required to, produce rebuttal evidence. *See, e.g., Incorporated Town of Carter Lake v. Anderson Excavating and Wrecking Co.*, 241 N.W.2d 896, 902 (Iowa 1976) (city produced testimony of environmental quality department inspector and county health officer in support of sanitary landfill ordinance); *Keller v. City of Council Bluffs*, 246 Iowa 204, 208, 66 N.W.2d 113, 117 (1954) (city produced evidence in support of zoning ordinance that building could not be used as private dwelling). When the city produces no evidence it assumes the risk that the court will find the challenger's burden of persuasion is sustained. *Cf. McDowell*, 241 N.W.2d at 908.

■ We gather from the district court ruling that there was no evidentiary showing here and no request that facts be judicially noted. Certainly there is no record of farming practices, population density, sanitation or public health needs, or of any other matter which might shed light on the reasonableness of the ordinance. All such matters were left to the personal predilections of the magistrate and judge. On this record, or to be more precise, in view of the lack of it, we cannot find that defendant has established his unreasonableness challenge to the ordinance. Accordingly, we cannot affirm the district court in holding the ordinance unconstitutional on this ground.

■ III. Cain also challenges the ordinance on vagueness grounds. We recently stated the test for determining whether an ordinance is unconstitutionally vague:

It is a basic principle of law that an enactment is void for vagueness if its prohibitions are not clearly defined. The law must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Second, laws must provide explicit standards for those who apply them. [Authorities.]

However, literal exactitude or precision is not necessary. Due process requires no more than a reasonably ascertainable standard of conduct. [Authority.] If the statute's meaning is fairly ascertainable by reliance on generally accepted and common meaning of words used, or by reference to the dictionary, related or similar statutes, the common law, or previous judicial constructions, due process is satisfied. [Authority.] If vagueness can be avoided by a reasonable construction, consistent with the statute's purpose and traditional restraints against judicial legislation the ordinance must be interpreted in that way. [Authorities.]

*Flett*, 330 N.W.2d at 256.

Defendant believes the ordinance lacks articulable standards and points to several sections as examples. We note that section 4.20.330 provides that evidence of lack of sanitary maintenance shall include the presence of flies in *excessive* amounts, *accumulation* of any removable *obnoxious* materials, *obnoxious* odors, and *any* condition which constitutes a *menace* to public health. Section 4.20.340 requires *any* materials which *may* create *any obnoxious* odors to be placed in containers or plowed under every twenty-four hours. Section 4.20.380 requires feeding stations to be maintained *in such a way*, and section 4.20.390 requires food to be stored in a *manner*, as to not invite *vermin* infestation.

These provisions fail under the vagueness test quoted from *Flett*. A person of reasonable intelligence would not know what is prohibited or required under the provisions quoted. They are unconstitutionally vague.

IV. There is a severability clause in the ordinance. On the basis of that clause the city asks that we prune through the doubtful provisions, discard what is unconstitu-

tional, and hold Cain for violating whatever can pass constitutional muster.

■ The common law presumed that unconstitutional portions of a statute or ordinance could not be severed, so as to leave in effect whatever constitutional portions remained. This presumption proceeded in the belief the drafters would ordinarily wish for an enactment to fall altogether if a portion of it were to be struck. *See Williams v. Standard Oil Co.*, 278 U.S. 235, 241, 49 S.Ct. 115, 117, 73 L.Ed. 287, 309 (1929). The common law rule never prevailed in Iowa. Ordinarily we sustain valid portions of an enactment which can be separated from the invalid portions. *See State v. Monroe*, 236 N.W.2d 24, 35 (Iowa 1975); *State v. Aldrich*, 231 N.W.2d 890, 895 (Iowa 1975); *Santo v. State*, 2 Iowa 164, 205 (1856). *See also* Iowa Code § 4.12 (1983). The question is whether there remains a viable statute expressive of legislative intent. *Monroe*, 236 N.W.2d at 35.

■ A finding of separability, of course, is generally strengthened by a severability clause, such as exists in the ordinance here. On the other hand the existence of such a clause is not conclusive of the separability question.

> A separability clause is only an aid to construction, according to the [United States Supreme Court], and that tribunal will invalidate an entire statute, not withstanding that it contains a separability clause, when it concludes that the part found to be constitutional could not stand by itself or could not have been intended by the legislature to be independently operative. A separability clause, said Justice Brandeis, speaking for the court, "provides a rule of construction which may sometimes aid in determining" legislative intent. "But," he added, "it is an aid merely; not an inexorable command."

C. Antieau, Modern Constitutional Law at § 15:35 (quoting *Dorchy v. Kansas*, 264 U.S. 286, 290, 44 S.Ct. 323, 325, 68 L.Ed. 686, 689 (1924)) (footnotes omitted).

The federal courts, in considering acts of congress, have observed the inappropriateness of applying the separability rule when the effect would be to involve the judiciary in wholesale legislation.

> "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. The courts enforce the legislative will when ascertained, if within the constitutional grant of power. Within its legitimate sphere Congress is supreme and beyond the control of the courts; but if it steps outside of its constitutional limitations, and attempts [to do] that which is beyond its reach, the courts are authorized to, and when called upon in due course of legal proceedings, must, annul its encroachments upon the reserve power of the states and the people. To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty."

*Butts v. Merchants' & Miners' Transportation Co.*, 230 U.S. 126, 135, 33 S.Ct. 964, 966, 57 L.Ed. 1422, 1426 (1913) (quoting *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563, 566 (1876)).

In the context of overbreadth challenges, the rule has been stated more recently as follows:

> Thus, where a statute has already been declared unconstitutional in a large number of its intended applications, and it appears that it was not intended to stand as valid in the few remaining fortuitous situations to which it might apply, [citing *Butts v. Merchants' & Miners' Transportation Co.*]; where a state court has declared valid one provision or application of a statute which is inextricably tied up with an invalid one [citing *Dorchy v. Kansas* ]—in such circumstances the broad constitutional challenge may be mounted.

*Goguen v. Smith,* 471 F.2d 88, 92 (1st Cir.1972); *See also United States v. Raines,* 362 U.S. 17, 23, 80 S.Ct. 519, 524, 4 L.Ed.2d 524, 530 (1960); *United States v. McElroy,* 259 F.2d 927, 930–33 (D.C.Cir. 1958).

 It is clear that we have normally applied the separability rule. We nevertheless think, for reasons made plain in the quoted federal authorities, the rule has no application here. Cain is charged with not obtaining a license. Generally a person so charged may question the facial unconstitutionality of the license as a part of the defense against the charge. *See Lovell v. Griffin,* 303 U.S. 444, 452–53, 58 S.Ct. 666, 669, 82 L.Ed. 949, 954 (1937). Cain's standing, under *Lovell,* to mount his facial constitutional challenge does not answer the separability question. But the broad licensing requirement, intertwined as it is with the challenged provisions of the ordinance, affects the separability question.

 The permit required under section 4.20.280 may be obtained only after an inspection showing compliance with all the requirements of the ordinance. In the previous division we pointed out a number of provisions that are unconstitutionally vague. Little else remains in the ordinance, certainly not enough to justify gleaning from it one or a few requirements that might withstand the constitutional challenge. The result would be the most convoluted sort of judicial legislation.

Cain should not be required to apply for a license under such circumstances. We conclude he cannot be held for a criminal violation under the licensing provision.

The district court accordingly was right in dismissing the charge.

AFFIRMED.

All Justices concur except McCORMICK, J., who dissents.

McCORMICK, Justice (dissenting).

I concur in division I, concur with the result in division II, and dissent from divisions III and IV and the result in the case.

I. My problem with division II is its failure to distinguish between "adjudicative" and "legislative" facts. The distinction originated with Professor Kenneth Davis. *See* Davis, *An Approach to Problems of Evidence in the Administrative Process,* 55 Harv.L.Rev. 364, 404–07 (1942). It has been recognized and discussed by commentators. *See, e.g.,* C. McCormick, *Handbook of the Law of Evidence* § 328, at 759 (2d ed. 1972). It has been applied by this court. *See, e.g., Richards v. City of Muscatine,* 237 N.W.2d 48, 56 (Iowa 1975). The distinction is also reflected in Iowa Rule of Evidence 201 concerning judicial notice. The advisory committee note to the comparable Federal Rule of Evidence 201 explains the difference as follows:

> Adjudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body.

The key to the distinction is that adjudicative facts concern the immediate parties whereas legislative facts do not. *See* 3 K. Davis, *Administrative Law Treatise* § 15:5 (1980).

Legislative facts play a prominent role in constitutional and common law cases. *See* McCormick, *supra,* § 331. Formal requisites for judicial notice of legislative facts have not been devised:

> Legislative facts, of course, have not fitted easily into any effort to propound a formalized set of rules applicable to judicial notice. These facts, after all, tend to be less than indisputable ones and hence beyond the pale of judicial notice according to a literal reading of the Uniform Rules of Evidence. What then of the requirement that, before judicial notice is taken, the parties be afforded a reasonable opportunity to present information relative to the propriety of taking judicial notice and the tenor of the matter to be noticed? By and large the parties have this opportunity during ar-

guments over motions as to the applicable law to be applied to the controversy, by exchanging briefs, and by employing the technique exemplified by the Brandeis brief. It appears, therefore, that there exists no felt need to formalize the procedures pertaining to the opportunity to be heard with reference to legislative facts.

*Id.* § 333, at 772. Such a formulation may not be feasible:

Whatever the ultimate doctrinal synthesis of judicial notice of adjudicative facts comes to be, a viable formulation of rules laying down a similarly rigid etiquette with regard to legislative facts has not proved feasible. Given the current recognition that nonadjudicative facts are inextricably part and parcel of the law formulation process in a policy-oriented jurisprudence, there may be no need to formulate a distinctly judicial notice-captioned procedure with regard to nonadjudicative facts.

*Id.* § 334, at 774–75.

An extensive and helpful discussion of the role of legislative facts appears in 2 K. Davis, *Administrative Law Treatise* § 15.-03 (1958). Davis notes the practical difference between legislative and adjudicative facts:

The exceedingly practical difference between legislative and adjudicative facts is that, apart from facts properly noticed, the tribunal's findings of adjudicative facts must be supported by evidence, but findings or assumptions of legislative facts are not, and sometimes cannot be supported by evidence.

*Id.* at 353.

I do not advocate a departure from principles of fundamental fairness in constitutional and common law adjudication. Parties should be permitted to express their views on matters of legislative fact before a court relies on them in fashioning its judgments. I do not believe either the court or parties, however, are confined to introducing evidence or complying with formal requisites for judicial notice. I doubt that the United States Supreme Court could have declared school segregation to be a denial of equal protection in *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), if the parties and Court had been so limited. Nor do I believe this court could have recognized a warranty of habitability between landlord and tenant in *Mease v. Fox,* 200 N.W.2d 791 (Iowa 1972), if the court were confined in such a straitjacket. *See* McCormick, *supra,* § 331, at 768.

In the present case, however, neither adjudicative nor legislative facts support the district court's declaration that the ordinance violates substantive due process. I therefore agree with the court's conclusion in division II of the opinion.

II. Defendant failed even more obviously to establish the facial vagueness of the ordinance. His entire argument concerning the asserted unreasonableness of the ordinance is based on the alleged stringency of its requirements. Yet in his vagueness argument he contends a person of reasonable intelligence is unable to tell what the ordinance requires or prohibits. Neither he nor the court has shown that the provisions alleged to be vague are not susceptible to reasonable judicial construction.

The words held by the court to be vague all have dictionary definitions. They are identical or similar to words used in statutes imposing similar requirements. *See, e.g.,* Iowa Code § 192.21(3) (1983) ("Effective means shall be provided to prevent the access of flies and rodents."); § 657.2(2) (nuisance—"The causing or suffering of any offal, filth, or noisome substance to be collected or to remain in any place to the prejudice of others.").

Defendant has made only a generalized facial attack on the requirements of the ordinance. I believe this attack is satisfactorily answered by noting the terminology of the ordinance is similar to that used in nuisance statutes. *See* §§ 657.1 and 657.2. Interpretations in nuisance cases will provide useful guidance in interpreting the ordinance. Section 657.2(1), for example, provides that "offensive smells" in certain

circumstances are a nuisance. This court had no difficulty applying the offensive smell concept in *Patz v. Farmegg Products, Inc.*, 196 N.W.2d 557 (Iowa 1972). The term "obnoxious odor" used in the present ordinance is capable of similar construction and application. *See, e.g., State v. Lloyd A. Fry Roofing Co.*, 310 Minn. 535, 246 N.W.2d 692 (1976).

Defendant has failed to demonstrate that the provisions of the ordinance cannot be given a reasonable construction that will satisfy the due process standard.

III. Assuming the invalidity of the provisions striken by the court, I believe the court has misapplied the severability doctrine. The severability question is one of legislative intent. *Motor Club of Iowa v. Department of Transportation*, 251 N,W.2d 510, 519 (Iowa 1977). When, as here, the enactment contains a severability clause "the presumption is inescapable that this was the legislative intent." *State v. Books*, 225 N.W.2d 322, 325 (Iowa 1975).

This is a textbook case for application of the severability doctrine. A licensing ordinance is involved. Defendant is charged for failing to have a permit, not for having violated one of the sanitation provisions. Those provisions are not interdependent; they are distinct and cumulative. Removal of one has no necessary effect on another, and removal of all of them has no necessary effect on the permit requirement.

The City stated its intention that the permit requirement be retained even if particular sanitation provisions should be striken. As the rule requires, I would give effect to this intention.

I would reverse the trial court but, because defendant has been acquitted, would not remand.