**CITY OF DES MOINES, Iowa, A Municipal Corporation, Appellee,**

v.

**MASTER BUILDERS OF IOWA, Appellant.**

No. 92–345.

Supreme Court of Iowa.

April 21, 1993.

Leon R. Shearer and Ann M. Ver Heul of Shearer, Templer, Pingel & Kaplan, P.C., West Des Moines, for appellant.

Terrence L. Timmins, City Solicitor, Des Moines, for appellee.

HARRIS, Justice.

A Des Moines ordinance established a prevailing wage requirement for public improvement projects. This action challenges the ordinance on two grounds. It is said the ordinance (1) exceeds the home rule power granted cities by the Iowa Constitution and (2) violates the preemption provisions of federal legislation. The trial court disagreed with the first challenge but agreed with the second. We think the ordinance is vulnerable to both challenges.

The ordinance establishes the prevailing wage requirement for all public improve-ment contracts over $25,000 which are let for construction by the City of Des Moines (the city). Des Moines, Iowa, ordinance 11, 653, §§ 18–67, 72(a) (April 15, 1991). According to the ordinance the "prevailing wage" is determined by the United States department of labor pursuant to the federal Davis–Bacon Act, 40 U.S.C. § 276a *et seq.*, as amended. *Id.* § 18–64.

Master Builders of Iowa (Master Builders) was among those who objected when the ordinance was being considered. After adopting the ordinance the city brought this declaratory judgment action against Master Builders, seeking a ruling that it is valid. Master Builders is a statewide trade association that represents over 1500 firms involved in the Iowa construction industry.

Responding to Master Builder's motion for summary judgment, the district court held the ordinance does not conflict with any law of the General Assembly and is therefore a valid exercise of the city's home rule power. The court however sustained the motion upon finding that its subject matter is preempted by the employee retirement income security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.* The district court therefore struck down the ordinance.

I. Iowa cities were first granted home rule by statute, now Iowa Code section 364.1 (1993). 1963 Iowa Acts ch. 235, § 1. In 1968 cities were also granted a constitutional right to home rule. Iowa Const. art. III, § 38A. Both grants were aimed at the once renowned Dillon rule, first adopted by our court in *Merriam v. Moody's Executors,* 25 Iowa 163, 170 (1868), an opinion by Chief Justice John F. Dillon. Under the Dillon rule municipalities were powerless to act in the absence of an express legislative grant of authority. The upshot was to render cities incapacitated in numberless matters of vital importance to local governments. *See, e.g., Richardson v. City of Jefferson,* 257 Iowa 709, 713–14, 134 N.W.2d 528, 531 (1965). For the most part home rule can be said to have reversed the presumption of authority; cities now have authority to act unless a particular power has been denied them by

statute. *See City of Des Moines v. Gruen*, 457 N.W.2d 340, 341 (Iowa 1990).

A limitation on home rule power, appearing in both the Constitution and in the statute, is a focal point in this dispute. A city cannot act in a matter "inconsistent with the laws of the General Assembly." This identical language appears in both the Constitution and the statute.

> A municipal ordinance is "inconsistent" with a law of the general assembly and, therefore, preempted by it, when the ordinance "prohibits an act permitted by a statute, or permits an act prohibited by a statute." A municipal ordinance also is preempted by state law when the ordinance invades an area of law reserved by the legislature to itself.

*Gruen*, 457 N.W.2d at 342 (citations omitted). Nevertheless "a city has the power to enact an ordinance on a matter which is also the subject of statute if the ordinance and statute can be harmonized and reconciled." *City of Council Bluffs v. Cain*, 342 N.W.2d 810, 812 (Iowa 1983); *see also* Iowa Code § 364.2(3) ("An exercise of a city power is not inconsistent with a state law unless it is irreconcilable with the state law.").

Master Builders argues the prevailing wage ordinance is inconsistent with the purposes of the competitive bidding requirement contained in Iowa Code section 384.99. This section provides:

> The contract for the public improvement must be awarded to the lowest responsible bidder, provided, however, that contracts relating to public utilities or extensions or improvements thereof ... may be awarded by the governing body as it deems to be in the best interests of the city.

The trial court rejected the claim on finding that the ordinance renders no one ineligible to bid, and treats all contractors equally. It pointed out that all bidders are informed of the prevailing wage requirement and can calculate their bids accordingly.

The holding overlooks the underlying purpose of the competitive bidding statute. That purpose is to secure competitive bidding in order to provide a city with the best results at the lowest possible price for a specific project. *See Istari Constr., Inc. v. City of Muscatine*, 330 N.W.2d 798, 800 (Iowa 1983); *Miller v. Incorporated Town of Milford*, 224 Iowa 753, 770, 276 N.W. 826, 834 (1937); *Hoffman v. City of Muscatine*, 212 Iowa 867, 881, 232 N.W. 430, 436 (1930). The competitive bidding statute is thwarted as much by a scheme that artificially elevates low bids as it is by the elimination or rejection of low bids. Either way the taxpayers are denied the advantage of obtaining the lowest responsible bid.

The city contends that the goal of the ordinance is merely to obtain a minimum quality level of labor. But cost is an unreliable indicator of quality. If the city's goal is truly aimed at quality, it should impose standards more reflective of quality, and leave taxpayers free access to the lowest responsible bids.

We conclude that the ordinance does conflict with Iowa Code section 384.99 and is therefore invalid.

II. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137, 111 S.Ct. 478, 482, 112 L.Ed.2d 474, 482 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490, 497 (1983)). ERISA protects the interests of employees "through substantive requirements imposed upon pension plans relating to participation, funding, and vesting, ... and through uniform procedural standards for reporting, disclosure, and fiduciary responsibilities for both pension and welfare plans...." *Local Union 598, Plumbers & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1217 (9th Cir.1988) (Jones), *aff'd mem.*, 488 U.S. 881, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988).

"As part of this closely integrated regulatory system Congress included various safeguards to preclude abuse and 'to completely secure the rights and expectations brought into being by this landmark reform legislation.'" *Ingersoll–Rand*, 498 U.S. at 137, 111 S.Ct. at 482, 112 L.Ed.2d at

482–83 (quoting S.Rep. No. 93–127, p. 36 (1973), U.S.Code Cong. & Admin.News 1974, p. 4639). Prominent among these safeguards is ERISA's broad preemption provision, section 514(a), 29 U.S.C. § 1144(a). Preemption is the key issue here.

The vast scope of the preemption is surprising; indeed it is astonishing. Section 514(a) preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit *plan*" covered by ERISA. (Emphasis added.) The question whether the Des Moines ordinance is preempted depends on whether it "relates to" a benefit plan.[1] "If so, it is void under the Supremacy Clause contained in Article VI of the [federal] Constitution." *Stone & Webster Eng'g Corp. v. Ilsley*, 690 F.2d 323, 328 (2d Cir.1982), *aff'd mem. sub nom. Arcudi v. Stone & Webster Eng'g Corp.*, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983).

"The question whether a certain state action is preempted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." *Ingersoll–Rand*, 498 U.S. at 137–38, 111 S.Ct. at 482, 112 L.Ed.2d at 483 (internal quotations omitted) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206, 213 (1985)).

At a minimum, state laws that (1) make specific reference to, or (2) are specifically designed to affect, employee benefit plans are preempted. *See Ingersoll–Rand*, 498 U.S. at 140, 111 S.Ct. at 483, 112 L.Ed.2d at 484–85; *Mackey v. Lanier Collections Agency*, 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836, 843–44 (1988). Thus the Des Moines ordinance is preempted if it relates to an ERISA benefit plan. The ordinance requires "all construction contractors and subcontractors on city public improvement projects [competitively bid] to pay not less than the current prevailing wage rates, as determined and fixed by the U.S. Department of Labor pursuant to the Davis–Bacon Act." Des Moines, Iowa, ordinance 11,653, § 18–64. This requirement is later phrased as a requirement "to pay ... not less than the current applicable prevailing wage and fringe benefits, as published in the Federal Register...." Des Moines, Iowa, ordinance 11,-653, § 18–67(b).[2]

It can be seen that benefit plans set up for employees of prospective contractors

1. For purposes here the ordinance is a state law. As used in ERISA the term "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." § 514(c)(1), 29 U.S.C. § 1144(c)(1). The term "State" is defined in ERISA as "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter." § 514(c)(2), 29 U.S.C. § 1144(c)(2).

2. The ordinance defines "prevailing wages" and "prevailing wage rates" as "rates of wages including fringes ... for Polk County, Iowa." Des Moines, Iowa, ordinance 11,653, § 18–66. The ordinance defines the Davis–Bacon Act as "40 U.S.C. 276a, and related acts, as amended...." *Id.* The Davis–Bacon Act provides in part:
   "[P]revailing wages" shall include—
   (1) the basic hourly rate of pay; and
   (2) the amount of—
   　(A) the rate of contribution irrevocably made by a contractor or subcontractor ... pursuant to a fund, plan, or program; and
   　(B) the rate of costs to the contractor or subcontractor which may be reasonably anticipated in providing benefits ... pursuant to

an enforceable commitment to carry out a financially responsible plan or program

. . . . .

for medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, for unemployment benefits, life insurance, disability and sickness insurance, or accident insurance, for vacation and holiday pay, for defraying costs of apprenticeship or other similar programs, or for other bonified fringe benefits, ...
*Provided,* That the obligation of a contractor or subcontractor to make payment in accordance with the prevailing wage determinations of the secretary of labor ... may be discharged by the making of payments in cash, by the making of contributions of a type referred to in paragraph (2)(A), or by the assumption of an enforceable commitment to bear the costs of a plan or program of a type referred to in paragraph (2)(B), or any combination thereof, where the aggregate of any such payments, contributions, and costs is not less than the rate of pay described in paragraph (1) plus the amount referred to in paragraph (2).
40 U.S.C. § 276a(b) (1931).

are implicated, bringing the process within the ERISA preemption. This is an area reserved for federal authorities alone, and outside the authority of the city of Des Moines. *See General Elec. Co. v. New York State Dep't of Labor*, 891 F.2d 25 (2d Cir.1989), *cert. denied*, 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990); *Jones*, 846 F.2d 1213, *aff'd mem.*, 488 U.S. 881, 109 S.Ct. 210, 102 L.Ed.2d 202; *Stone & Webster*, 690 F.2d 323, *aff'd mem.*, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405. The trial court was correct in so holding.

**AFFIRMED.**

All Justices concur except SCHULTZ, LAVORATO and ANDREASEN, JJ., who concur specially, and CARTER, J., who dissents.

SCHULTZ, Justice (specially concurring),

I disagree with Division I of the majority opinion. I do not agree that Iowa Code section 384.99, the competitive bidding law, conflicts with the city ordinance. The purpose of section 384.99 is to protect the lowest bidder, rather than dictate the contract terms that a city might place in its bids. I particularly disagree with the suggestion that the city should protect itself by the imposition of standards reflective of quality. That is a judgment call for the city to make and one we are neither qualified nor authorized to make.

Because I agree with Division II of the majority opinion, I concur.

LAVORATO and ANDREASEN, JJ., join this special concurrence.

CARTER, Justice (dissenting).

I dissent.

I believe the challenged ordinance was within the City's authority to enact and should be upheld. The district court correctly decided that, as long as all contractors are treated equally, the ordinance is not contrary to statutory competitive bidding laws.

I disagree with the district court's alternative conclusion that the ordinance sufficiently implicates ERISA so as to be preempted by that federal legislation. The ordinance has no direct effect on the employee benefits that are negotiated between the contractors and their employees. It is merely a "fact of life" consideration of which all contractors bidding with the City must take cognizance.