Howard A. Zeller, J.
Plaintiffs have moved for summary judgment in this action for a declaratory judgment brought to determine the rights and legal relationships of defendants. Plaintiffs ask to have a merger of the defendant churches declared a nullity, seek to have real property and personal assets restored to two of them, and request other relief. Defendants have cross-moved for a dismissal of the complaint for lack of jurisdiction.
St. Mary’s Church of Binghamton was incorporated in 1887 and ite edifice is located on Court Street. The Church of the Assumption of the Blessed Virgin was incorporated in 1913 and its Church was located on Hawley Street, one block away from St. Mary’s Church.*
Binghamton is within the Roman Catholic Diocese of Bishop Walter A. Foery of Syracuse. In April, 1967 the bishop announced by letter to the parishioners of St. Mary’s Church and to the parishioners of the Church of the Assumption of the Blessed Virgin that the two Churches would be merged. He wrote, in part: “We have concluded that the most effective use of the Churches ’ resources in this area will be accomplished by a merger * * *. The property, assets, records, and so forth, of these two parishes are to be united and joined into *280 one unit ’ ’. The name St. Mary of the Assumption was suggested by the Bishop for the new parish. St. Mary of the Assumption Church of Binghamton was incorporated on May 17, 1967 pursuant to section 90 of the Religious Corporations Law of the State of New York.
On October 17, 1967 there was a joint meeting of the trustees of the St. Mary’s Church and the Church of the Assumption of the Blessed Virgin. By separate resolutions the trustees of each church voted to merge with and transfer the assets of their church to the recently incorporated St. Mary of the Assumption Church of Binghamton. On March 1, 1968 petitions were presented by St.' Mary’s Church and by the Church of the Assumption of the Blessed Virgin to the State Supreme Court for orders permittting each church to convey without money consideration its real property to St. Mary of the Assumption Church of Binghamton. Section 12 of the Religious Corporations Law permits a religious corporation, upon order of the court, to convey its real property to another religious corporation for one dollar or other nominal consideration. The court granted the petitions and orders were issued permitting each of the churches to convey its real property to St. Mary of the Assumption Church of Binghamton. Subsequently, the real property of the two churches and their other assets were conveyed and transferred to the new religious corporation. Shortly after the court approved the conveyances, the edifice of the Church of the Assumption of the Blessed Virgin was torn down.
Some of the parishioners of the Church, of the Assumption of the Blessed Virgin, including plaintiffs, were, and are, opposed to the merger. Plaintiffs and many other parishioners desire moneys which they had raised over the years, hoping to build a new church edifice, and which, with other assets, have been turned over to the new religious corporation, be ordered ilsed for a church building program or be returned to the contributors.
Plaintiffs claim no legal fusion has taken place and request the property of the two original churches he ordered restored by judicial decree. Plaintiffs contend the joint meeting of the trustees of the two original churches resulted in an agreement to attempt to consolidate the two churches pursuant to section 13 of the Religious Corporations Law rather than an attempt to transfer real property pursuant to section 12. They also claim each resolution passed at the joint meeting of the trustees was invalid because of the interlocking membership of the trustees of each original church.
*281 It is true that section 13 of the Religious Corporations Law provides methods whereby two or more incorporated churches may agree to petition the court for an order consolidating the two religious corporations. It is also true that three of the five trustees of St. Mary’s Church of Binghamton were also trustees of the Church of the Assumption of the Blessed Virgin in 1967 and the same became three of the five trustees of the new St. Mary of the Assumption Church. However, these facts do not render illegal the union of the two original Roman Catholic parishes or make invalid the transfer of their properties to the new religious corporation, in view of the ecclesiastical form of government of the Roman Catholic Church as clearly recognized by the Religious Corporations Law of the State of New York.
Section 5 of the Religious Corporations Law of New York State provides: £ £ The trustees of every religious corporation shall have the custody and control of all the temporalities and property, real and personal, belonging to the corporation and of the revenue therefrom, and shall administer the same in accordance with the discipline, rules and usages of the corporation and of the ecclesiastical governing body, if any, to which the corporation is subject, and with the provisions of law relating thereto ”. (Italics supplied.) The same section also provides the trustees of an incorporated Roman Catholic church shall not transfer any property without the consent; of the bishop of the diocese to which the church belongs.
The ecclesiastical power of a diocesan bishop to mandate, a merger of parishes and churches lies in Canon 1423 of the Code of Canon Law of the Roman Catholic Church, stating in part, that bishops £ £ may because of the needs or the great and evident, interest of the Church, effect an equally or less principal union of parish churches among themselves ’
Section 91 of the Religious Corporations Law provides that the bishop and the vicar-general of the diocese to which any Roman Catholic church belongs shall be trustees of such church. The third trustee of the five-man board of trustees is the church’s rector, who is appointed (and may be withdrawn) by the bishop. For many years the same priest .served both original parishes in Binghamton. The other two members of the board are lay parishioners selected by the ecclesiastical members for one-year terms. It is thus apparent that the trustees of a Roman Catholic church, by the very operation of both canonical and State law, are recognizably interlocked with the boards of trustees of the other churches in the diocese. Nor, as noted in People’s Bank v. St. Anthony’s Roman Catholic Church (109 *282 N. Y. 512), do the parishioners have any voice in selection of their church’s trustees.
•Section 91 of the Religious Corporations Law further states, “ No act or proceeding of the trustees of any such incorporated [Roman Catholic] church shall be valid without the sanction of the archbishop or bishop of the diocese to which such church belongs ”.
Coupled with the bishopric power to merge parishes the power also there resides to divide parishes and dispose of parish properties, “ independently of any action or consent on the part of the trustees of the original Roman Catholic church corporation ”. (Religious Corporations Law, § 92.) And the power to divide parishes and dispose of properties granted by section 92 amounts to a power to extinguish a parish and dispose of its properties. Nor does the power of a bishop to direct “ an equally or less principal union of parish churches ” imply any less ultimate power. (Code of Canon Law, canon 1423.)
The parishioners of the former parish of the Church of the Assumption of the Blessed Virgin never had nor could they acquire any substantive control or vested interest in either real or personal property, including funds, once relinquished to the church corporation for church uses. The properties of that parish’s corporate body were and are subject to the superior ecclesiastical power of the diocese. (See Baxter v. McDonnell, 155 N. Y. 83, 101.) For that reason, it is irrelevant that some of the funds accumulated over the years by the church corporation were, in the minds of the parishioners, hopefully intended for construction of a new church edifice. And, .as stated in an affidavit of Bishop Foery, no such use or dedication of the parish’s corporate funds had even been authorized by the diocese.
The identity and actual control of a Roman Catholic church’s corporate body, which exists primarily to hold that church’s assets, is distinct and separate from and not subject to any direct control by the body of the parishioners. And, in the hierarchy of Roman Catholic church organizations the powers, and concomitant control, descend from each respective higher church authority, down ultimately to the corporate body of the individual church corporation, over the conduct of which the parishioners of that individual church have no ultimate control. As demonstrated by statutes heretofore quoted, the laws of the State of New York clearly recognize 'this particular authoritarian ecclesiastical form of the Roman Catholic church’s organization and its powers.
*283 Conversely with many other organized religious denominations, the ultimate power of their particular organizational hierarchies derives from and is subject to the ultimate control of the parish bodies making up that particular church. For example, the trustees of a Congregational Church have no power to call, settle or remove a minister or fix his salary without the consent of a majority of the church members attending a corporate meeting. (Religious Corporations Law, § 169.) But the rules and practices of other religious denominations or the statutory or case law pertaining to them just are not applicable to the Roman Catholic church.
The sections of the Religious Corporations Law applicable to the Roman Catholic church must be read in conjunction with the Code of Canon Law of that church. When so read, it is clear the bishop of the diocese and the trustees of the two original religious corporations did not exceed their authority or act contrary to law. It is also clear that the trustees proceeded pursuant to section 12 of the Religious Corporations Law as they had the right to do.
Plaintiffs’ motion for summary judgment should be denied and summary judgment dismissing the complaint on the merits should be granted defendants. (CPLR 3212, subd. [b].)
Defendants’ cross motion to dismiss the complaint for lack of jurisdiction should be dismissed as academic.

 The first general law of the State of New York for the incorporation of churches was passed in 1784. It was applicable to all denominations. (L. 1784, ch. 18.) It was soon found that features of different denominations did not harmonize with this law and separate statutes have been passed from time to time for the incorporation of different denominations. As examples, in 1795 a law was enacted applicable only to Protestant Episcopal Churches (L. 1795, ch. 25), now Religious Corporations Law (§§ 40, 41), and a 1961 statute provides for the incorporation of the Byelorussian Autocephalic Orthodox Church in America. (Religious Corporations Law, § 176.)