**STATE of Minnesota, Respondent,**

v.

**Henry Sylvester ZIMMER,
Petitioner, Appellant.**

**No. C2–91–500.**

Supreme Court of Minnesota.

Aug. 7, 1992.

Richard P. Clem, Clem & Crosby, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Paul A. Thompson, Kalina, Wills & Woods, Minneapolis, for respondent.

SIMONETT, Justice.

In this conviction for criminal trespass on church property, the defendant-appellant raises the single issue of whether the trial judge erred in refusing to admit the Code of Canon Law. The court of appeals held that the trial judge did not err. We agree and affirm.

Defendant Henry Zimmer is a long-time member of the Church of the Immaculate Conception in Columbia Heights. Some time after Father Walter Sochacki was appointed pastor of the parish in 1981, defendant became dissatisfied with some of the pastor's liturgical practices, such as cover-

---

ing the crucifix during Lent. There were confrontations between the two men, and defendant began distributing leaflets at services and carrying a 2–foot cross with him to mass.

On April 3, 1990, the pastor personally handed defendant a letter, signed by the pastor, ordering defendant to stay away from the church. The letter read:

During the past weeks your presence and your actions have intimidated and harassed many members of our parish both during weekend liturgies and at daily mass. You have been a constant source of fear to many of our parishioners.

With this letter I would like to take the opportunity to inform you that you are no longer allowed on our property (City Ordinance 609.605). If you chose [sic] to return to the property, you will be arrested.

It is only after long deliberation and consultation with our Parish Council that I have come to this conclusion. Your presence has been a constant intimidation and harassment over the past two years. It is our feeling that this must stop. Please be advised of our intention.

At trial, the pastor testified that while he had discussed the situation with his bishop (who suggested the problem might go away if ignored), and while he had also consulted with the Parish Council, the decision to ban defendant from church property was his decision. The pastor further testified that before issuing the letter he spoke with defendant several times and asked him to stop harassing people and making a nuisance of himself.

On April 4, 1990, the day after receiving the letter, defendant came on church property to attend a school meeting at the parish school. When the pastor reminded him of the letter, defendant left and sat in his car, where, shortly thereafter, a police officer tagged him for trespass. On July 4, 1990, defendant came to the church for mass. The pastor informed defendant "he

was not welcome and he was in violation," but defendant stayed for the mass and then left. The pastor signed a citizen's arrest and defendant was issued a second tag for trespass.

Criminal complaints for violating Minn. Stat. § 609.605, subd. 1(b)(3) were filed, and the matter came on for trial the following January. (The reference in the pastor's letter to City Ordinance 609.605 was evidently intended to be a reference to the state statute.) Before the jury was impaneled, defendant offered in evidence the Code of Canon Law "for the purpose of informing the jury what constitutes (a) a possessor, and (b) a claim of right on the part of a parishioner to attend church." The offer was rejected. The jury found defendant guilty on both counts, and he was given a $200 fine and 1 year probation conditioned on his obeying the pastor's letter.

The court of appeals dismissed the April 4 trespass conviction because defendant had immediately left the property when asked, but affirmed the second conviction. The panel reasoned that the Code was irrelevant to defendant's claim of right and, moreover, a civil court should avoid deciding criminal matters on the basis of church doctrine as set out in the Code. *State v. Zimmer*, 478 N.W.2d 764 (Minn.App.1991). We granted defendant's petition for further review.

As indicated, the only issue raised here by defendant-appellant is whether the trial court erred in refusing to admit the Code of Canon Law.

At trial, the pastor testified that he, as the duly appointed pastor of the parish, had the authority on behalf of the church as the "lawful possessor" of the church property to order defendant to stay off the property. Defendant claimed the pastor lacked this authority, and he testified he entered upon the church premises under a good faith claim of right as a parish member to attend services at the parish. The pastor testified defendant was free to attend mass and

other liturgical services at any other Catholic church.

Before addressing the legal issue, it is important to note that this case does not pose questions of church doctrine. Defendant was not barred from church property because of his views about church liturgy and doctrine but because he persisted in actions which, as the pastor's letter clearly states, "have intimidated and harassed many members of our parish" and "have been a constant source of fear to many of our parishioners."

Now for the issue of the Code's relevance. Arguably, some parts of the Code of Canon Law may have been relevant to some issues in the case, such as whether the pastor could act for the "lawful possessor." The difficulty, however, is that any potential probative value of the Code was clearly outweighed by the prejudice and confusion which would have ensued from the manner in which the defendant intended to use this evidence. Minn.R.Evid. 403; *Vikse v. Flaby*, 316 N.W.2d 276, 285 (Minn. 1982) (affirming exclusion of evidence that would have overly confused the jury).

Here defendant offered in evidence the entire Code consisting of 1,752 canons, most couched in terminology unfamiliar to lay people. The canons reflect a form of church governance which is hierarchical rather than congregational, again a matter not familiar to everyone, particularly those from a different church background. Defendant apparently intended to call the jury's attention to certain canons of his own selection, which would have required the jurors to interpret isolated provisions out of context and without any understanding of how they might interact with other canons. Also, many of the canons reflect church doctrine, which would be an invitation to the jurors to go beyond the "neutral principles of law" analysis to which civil courts are limited, *Jones v. Wolf,* 443 U.S. 595, 604, 99 S.Ct. 3020, 3025–26, 61 L.Ed.2d 775 (1979), and to embark on matters entirely irrelevant to the case.

Without expert assistance, the trial court and jury, unschooled in canon law, would be left on their own to interpret unfamiliar and ambiguous canons for answers to the legal issues of "lawful possessor" and "claim of right."[1] Indeed, the introduction to the edition of the Code which defendant offered as evidence stresses the dangers of an untutored interpretation of the Code. "The canons are marked by a certain abstractness—even artificiality. * * * In the concrete, therefore, it often admits of varying interpretations and applications. An exclusively literal reading can be especially risky in canon law." *The Code of Canon Law: A Text and Commentary* 13 (J. Coriden, T. Green & D. Heintschel eds. 1985). If defendant had called an expert on canon law to testify, portions of the Code (subject to requirements of relevancy and nonentanglement) might have been admissible. *See Stevens v. Roman Catholic Bishop of Fresno,* 49 Cal.App.3d 877, 123 Cal.Rptr. 171 (1975) (canon law experts testified on issue of whether a priest was the bishop's agent and acting within the scope of that agency when he was involved in an auto accident). But defendant did not do this, much less attempt to use the Code in his

1. The jury did not have to make an assumption (as the dissent suggests) that the pastor had "lawful possessor" authority to keep defendant from being disruptive at church services. The pastor, whose qualifications to give an expert opinion on his pastoral authority were not challenged, testified without objection that he had the requisite authority. Nor was defendant's claim of right to enter upon church premises to fulfill his religious duties disputed, only whether defendant's claim of right extended to include intimidation and harassment of the congregation.

In this appeal defendant does not question the sufficiency of the evidence. Instead, he claims that he should have been allowed to put the Code of Canon Law in evidence to dispute the pastor's testimony (although the canons cited by defendant are very opaque on this point), and to show he had a right to attend church to fulfill his religious obligations (a claim not disputed). Our opinion concedes the Code might have had some relevance to the case, provided, however, it was accompanied by expert interpretation. Here that proviso was not met, and that is all we decide and all we have been asked to decide.

cross-examination of the pastor. Thus we hold that the trial court did not abuse its discretion in denying defendant's offer of proof.

Affirmed.

YETKA, Justice (dissenting).

I dissent. This case does not belong in a civil court, and the state should not have prosecuted it there. Once brought, however, the state had the burden of proving *all* the elements of the alleged offense. Both lower courts assumed, solely on the testimony of the priest, that the parish priest was the lawful possessor of the church property with the authority to exclude Zimmer indefinitely.[1] This assumption was erroneous and an abuse of discretion. The majority opinion today compounds this error by making the same assumption, choosing instead to characterize Zimmer's offer of proof as irrelevant or foundationally inadequate. However, the majority's analysis is both inaccurate and inconsistent with precedent of this court and the United States Supreme Court. In my view, the majority sidesteps the central issue in this case. Therefore, I would reverse and dismiss the charges against Zimmer.

The first amendment prohibits civil courts from deciding ecclesiastical or doctrinal disputes. *Piletich v. Deretich,* 328 N.W.2d 696, 699 (Minn.1982) (*citing Maryland & Virginia Eldership of the Churches of God v. Church of God at Sharpsburg,* 396 U.S. 367, 368–70, 90 S.Ct. 499, 500–01, 24 L.Ed.2d 582 (1970)). Under this principle, civil courts must "defer to adjudications by the highest tribunal in a 'hierarchical' church organization on issues of religious doctrine or polity (form of government)." *Id.* at 699 [2] (*citing Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 724–25, 96 S.Ct. 2372, 2387–88, 49 L.Ed.2d 151 (1976)).

In this case, I agree with the majority that the court is not asked to resolve an issue of religious doctrine. Rather, it is asked to enforce the criminal trespass law of the State of Minnesota. As a simple trespass action, there is no first amendment prohibition on the state's prosecution of the alleged offense. However, the majority's analysis is incomplete: the first amendment prohibition on a civil court's deciding religious issues extends to matters of polity as well. This case could not fall more squarely in this category of internal church governance. In order for the state to prove two elements of the trespass action, it must establish matters that can only be characterized as ones of church polity; namely, whether the priest had the authority to bar Zimmer from the property and whether Zimmer, as a parishioner, had a good faith claim of right to be on the church premises. Not only are these issues of internal church governance, but resolution of the issues requires an authoritative interpretation of the Code of Canon Law.[3] In my view, it was error for the trial court to attempt to resolve the issues

---

1. The majority claims that the priest's "qualifications to give an expert opinion on his pastoral authority" went unchallenged by the defense and that, therefore, the court did not have to make an assumption as to the priest's "lawful possessor" status. Majority Op. at 888 n. 1. If this is true, however, it is only because the court excluded the Code of Canon Law, which directly controverted the pastor's testimony regarding his authority. Moreover, the majority makes the wholly unremarkable assertion that Zimmer's claim of right does not extend "to include intimidation and harassment of the congregation." *Id.* No one disputes the priest's authority to bar a parishioner who is unruly, intimidating or harassing. Thus, Zimmer's claim of right to be on the premises in the future *was* dis-

puted, and he should have been allowed to use the Code to support that claim.

2. "Hierarchical" is the opposite of "congregational" in this context. The distinction refers to whether there is a central authority to which local congregations are subject. *See* Ellman, *Driven from the Tribunal: Judicial Resolution of Internal Church Disputes,* 69 Cal.L.Rev. 1378, 1384 n. 19 (1981). No one here disputes that the Roman Catholic Church is "hierarchical."

3. What the majority leaves out of its reference to the introduction of the canon law text, submitted as an offer of proof in this case, supports this view:

   [The Code] touches on nearly every structure of the Roman Catholic Church in fewer than

in the first instance. Once it did, however, it unfairly denied Zimmer the right to interpose his defense by not receiving the Code into evidence. It was particularly egregious here because the record indicates that the complainant-priest lacked the approval of either the church council or his bishop to act as he did.

In circumventing the central issue presented here, the majority contends that, without expert assistance, the trial court and jury could not interpret "unfamiliar" and "ambiguous" canons to resolve the "legal" issues presented in this case. Majority Op. at 888. Aside from the fact that the jury does not decide "legal" issues, the issue here is whether Zimmer had a good-faith belief, based on the canons, that he had a claim of right to be on the property. At trial, Zimmer was not even allowed to testify that his belief was based on the canons. Thus, even if this case did not involve issues of church polity, I would allow the defense to use the Code at trial.

In my view, once the trial court allowed the prosecution of this action to proceed, the nature of the priest/parish/parishioner relationship required the court to consider the Code of Canon Law to resolve the lawful possessor and claim-of-right issues. In adjudicating church property and membership disputes, this court and the United States Supreme Court have adopted a "neutral-principles-of-law" analysis. *Piletich*, 328 N.W.2d at 701; *Jones v. Wolf,* 443 U.S. 595, 604, 99 S.Ct. 3020, 3025–26, 61 L.Ed.2d 775 (1979). This analysis allows civil courts to decide issues concerning ownership and control of church property using "the language of deeds, the terms of local church charters, state statutes governing the holding of church property, provisions in the constitution of the general church

* * * and general rules of property law." *Piletich,* 328 N.W.2d at 700. According to the Court,

> The primary advantages of the neutral-principles approach are that it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity. The method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice. Furthermore, the neutral-principles analysis shares the peculiar genius of private-law systems in general—flexibility in ordering private rights and obligations to reflect the intentions of the parties.

*Jones v. Wolf,* 443 U.S. at 603, 99 S.Ct. at 3025.

As in a property or membership dispute, the court may apply a neutral-principles analysis in this case. Contrary to the majority's assertion, a jury's examination of the Code would not be "an invitation" to go beyond a "neutral-principles" analysis and embark on the consideration of doctrinal matters. Rather, a civil court may examine religious documents in property dispute cases as long as it

> take[s] special care to scrutinize the document in purely secular terms, and not to rely on religious precepts. * * * If in such a case the interpretation of the instruments * * * would require the civil court to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body.

*Jones,* 443 U.S. at 604, 99 S.Ct. at 3026. Thus, the inquiry becomes whether it

---

two thousand canons, many of which contain not statutes or laws but exhortative or theological statements more properly classified as "ajuridic." * * *
To achieve church order, the Code frequently relies on the exercise of discretion by ecclesiastical administrators in applying the law to concrete situations. The administrator is

called upon to humanize and accommodate the legislator's canonical principles, set them in their proper context, apply them equitably, and dispense from them whenever pastorally necessary.
*The Code of Canon Law: A Text and Commentary* 11 (J. Coriden, T. Green & D. Heintschel eds. 1985).

would be possible for a civil court to "scrutinize the document in purely secular terms" or whether the civil court should defer to the "authoritative ecclesiastical body" for resolution of the issues. Interestingly, both a majority of this court and the trial court chose to ignore either inquiry in order to dispose of the case.

In my view, the canons are relevant, along with other evidence, to a "neutral-principles" determination of whether the church has vested its priests with the authority to bar parishioners from church property. *See Stevens v. Roman Catholic Bishop of Fresno,* 49 Cal.App.3d 877, 883, 123 Cal.Rptr. 171 (1975) (canon law received into evidence by way of expert testimony); *Jonathan v. Shea,* 19 Cal.App.3d 328, 335, 96 Cal.Rptr. 673 (1971) (provisions of canon law of Russian Orthodox Church considered without expert testimony); *Bishop & Diocese of Colorado v. Mote,* 716 P.2d 85, 108 (Colo.), *cert. denied,* 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986) (canons of local and general church considered by court without expert assistance in property dispute between factions of Episcopal Church); *Filetto v. St. Mary of the Assumption Church of Binghamton,* 61 Misc.2d 278, 305 N.Y.S.2d 403, 406 (N.Y.Sup.Ct.1969) (canon law considered in property dispute between factions in Roman Catholic Church). In addition, the canons, "scrutinized in purely secular terms," are determinative of the parishioner's claim of right. In this case, the jury should have been allowed to consider the canons as they related to Zimmer's reasonable belief that he had a right to be on the property. *State v. Brechon,* 352 N.W.2d 745, 750 (Minn.1984) (defendant may offer evidence of reasonableness of belief in claim of right). Thus, I would have allowed Zimmer to base his claim-of-right defense on the canons.

Accordingly, I would reverse and dismiss the charges. The issues would be best resolved by an authoritative ecclesiastical body within the church hierarchy.

GARDEBRING, Justice (dissenting)

I concur with that portion of the dissent which concludes that exclusion of the rele-

vant provisions of the Code of Canon Law was error. The "neutral-principles-of-law" doctrine, as enunciated by this court in *Piletich v. Deretich,* 328 N.W.2d 696 (Minn.1982), allows courts to consider church-originated documents, including local church charters and general church constitutions, in examining questions of the "control of church property," which is precisely the issue raised by the appellant's claim-of-right defense. The Code of Canon Law should have been admitted.

However, I believe that the dissent goes too far in concluding that this criminal trespass action involves a matter of church polity, and therefore, its consideration by the civil courts is prohibited by the first amendment. I believe it is more properly characterized as a matter which is "not * * * doctrinal, nor * * * committed to adjudication by the highest tribunal in a hierarchical church * * *." *Id.* at 700. I find no first amendment barrier to consideration by the civil courts.

Therefore, I would remand the matter to the trial court for retrial, directing that the Code of Canon Law be admitted into evidence on the lawful possessor and claim-of-right issues.