915 F.2d 1218
 JoAnne HVAMSTAD, Individually and d/b/a Lolita's Rap Parlor, Appellant,
v.
Frederick SUHLER, in his official capacity as City Attorney
for the City of Rochester; Raymond F. Schmitz, in his
official capacity of County Attorney for the County of
Olmstead; and Hubert H. Humphrey III, in his official
capacity as Attorney General for the State of Minnesota, Appellees.
 No. 90-5034MN.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 13, 1990.
Decided Oct. 5, 1990.
 
 Randall D.B. Tigue, Minneapolis, Minn., for appellant.
 Richard S. Slowes, St. Paul, Minn., for appellee.
 Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant has challenged the constitutionality of Minnesota's nuisance abatement law[1] with respect to prostitution convictions. The statute defines a nuisance as, among other things,three or more misdemeanor convictions or two or more convictions, of which at least one is a gross misdemeanor or felony, within the previous two years for: (1) acts of prostitution or prostitution related offenses committed within the building....
 
 
 2
 Minn.Stat.Ann. Sec. 617.81 (West Supp.1990).
 
 
 3
 Other provisions of the statute provide for notice of convictions to the building owner, a temporary order of injunction, one-year abatement, and release of the property from the abatement order by the posting of a bond.
 
 
 4
 In February 1988 Rochester City Attorney, Appellee Suhler, announced his intentions to utilize the statute in question to close down offending nuisances. Meanwhile, Appellant's business, Lolita's Rap Parlor,[2] was the situs of three convictions by pleas of guilty for misdemeanor prostitution--two in 1988 and one in 1989. Appellant preemptively struck, before any action was taken against her property, she filed suit in federal district court seeking a declaratory judgment that the Minnesota law was unconstitutional.
 
 
 5
 Appellant advanced both facial and as-applied arguments to the statute under due process and first amendment grounds. Her constitutional arguments did not persuade the district court.[3] Its findings of fact and conclusions of law are reported in Hvamstad v. Suhler, 727 F.Supp. 511 (D.Minn.1989). While we are in accord with the analysis of the district court as to both the first amendment and due process considerations, we briefly expound upon the first amendment and due process aspects of this case.
 
 
 6
 We fail to see a first amendment issue actually present in this case in light of Arcara v. Cloud Books, Inc., 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986). There, with respect to a bookstore's closure under a New York public health nuisance statute due to prostitution occurring on the premises, the Supreme Court found no first amendment protection for the bookstore. It said "the First Amendment is not implicated by the enforcement of a public health regulation of general application against the physical premises in which respondents happen to sell books." Id. at 707, 106 S.Ct. at 3177. Further, the Court concluded that "the closure sanction was directed at unlawful conduct having nothing to do with books or other expressive activity." Id. (emphasis added). "Rapping" rather than bookselling does not distinguish Arcara from the present case. The first amendment does not bar otherwise valid health and nuisance laws that are not designed to regulate expressive conduct. Likewise, there is no evidence that the statute here is being used as a pretext to regulate expressive conduct. See id. at 708, 106 S.Ct. at 3178 (O'Connor and Stevens, JJ., concurring).
 
 
 7
 Appellant's chief due process claim is substantive: that the abatement law denies her due process because it binds her by the requisite prostitution convictions without an opportunity to appear and challenge the underlying facts of those convictions. That is, she claims to be bound by judgments to which she was not a party. The district court rejected that argument and concluded that the state could properly conclude that repeated convictions for prostitution at one locale were sufficient to create a nuisance. See Hvamstad, 727 F.Supp. at 519.
 
 
 8
 Thus, the due process question posed by this case is whether a state may define a nuisance as a certain number of particular convictions at one location and provide for its abatement after a hearing to determine only whether the requisite number of convictions occurred on the property. We answer in the affirmative because Minnesota's statute is a reasonable legislative enactment for the achievement of a legitimate state objective. See Crowley Beverage Co., Inc. v. Miller Brewing Co., 862 F.2d 688, 691 (8th Cir.1988) (statute regulating beer brewers and wholesalers did not violate due process).
 
 
 9
 Minnesota has made a reasonable legislative determination that locations giving rise to certain recurrent criminal convictions are a public nuisance. Hence, it is no longer the acts themselves that are the nuisance; the successive convictions are the nuisance. If the statute permitted abatement on evidence of a single conviction with no opportunity for the property owner to deny the underlying act or first to eliminate the illegal act himself, the law would likely neither be reasonable nor constitutional.
 
 
 10
 However, the abatement statute sub judice is designed to encourage property owners to abate the basis for the nuisance themselves by delivering notice of the convictions to the owners. Those owners who do not abate the criminal activity, and instead allow it to continue on their premises despite notice of convictions therefrom, then face a judicial determination of nuisance and abatement based on the convictions, not the acts. We conclude that Minnesota may declare and abate nuisances defined by convictions with the statute under consideration consistent with due process.
 
 
 11
 Prior to abatement by the state, a property owner has had notice of the convictions, an opportunity to abate the acts himself, and an opportunity to be heard.[4] It is the recurrent convictions on his property for which the owner faces deprivation of that property. Because the state has made a reasonable legislative determination about those convictions and provided a mechanism of notice and an opportunity to be heard as to the convictions, we conclude that the state has satisfied the minimum requirements of due process, substantively and procedurally.
 
 
 12
 Having considered the arguments presented and concluding that no error of law exists, we affirm the order of the district court. See 8th Cir.R. 47B.
 
 
 
 [1]
 Minn.Stat.Ann. Secs. 617.80-617.87. (West Supp.1990)
 
 
 [2]
 Appellant describes her business as one "offering nonprofessional conversation to interested persons," Appellant's Brief at 1, and as "a business offering conversation for a fee to customers." Complaint at 6, Appellant's Appendix at 6. Cf. W. Allen, The Whore of Mensa, in Without Feathers 35 (1976)
 
 
 [3]
 The Honorable Donald D. Alsop, Chief Judge of the United States District Court for the District of Minnesota
 
 
 [4]
 In some sense, a property owner can be said to have greater notice and opportunity to protect his property under the new scheme. The predecessor statute, Minn.Stat.Ann. Secs. 617.33-617.41 (West 1987) (repealed by the current law), used the older and perhaps more familiar parlance, "[w]hoever shall ... maintain ... any building ... for the purpose of lewdness, assignation, or prostitution is guilty of a nuisance [abatable as provided]." Id. at Sec. 617.33. But now the state must have convictions (proven beyond a reasonable doubt or by guilty pleas) before it can even establish the nuisance, much less abate it. A property owner cannot contest the underlying acts because they are no longer the nuisance, per se. And, in fact, the acts will have already been proven by convictions whose reliability and certainty have been put to greater rigors in the criminal law than by any civil proceeding