STATE of Minnesota, Respondent,

v.

Larry Allan HOLMBERG, Appellant.

No. C3–94–696.

Court of Appeals of Minnesota.

Jan. 24, 1995.

Review Denied March 21, 1995.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Surell Brady, Minneapolis City Atty., Michael Moline, Asst. City Atty., Minneapolis, for respondent State of Minn.

Randall D.B. Tigue, Minneapolis, for appellant Larry Allan Holmberg.

Considered and decided by LANSING, P.J., KLAPHAKE and MULALLY,* JJ.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

## OPINION

MULALLY, Judge.

This appeal is from a judgment of conviction for operating a disorderly house, a misdemeanor ordinance violation. *See* Minneapolis, Minn., Code of Ordinances § 385.170(b)(1) (1991). We affirm.

## FACTS

Appellant Larry Holmberg is the owner of Buns and Roses Bookstore in downtown Minneapolis. This adult bookstore has a video booth section that customers may enter after paying a $5.00 charge. Customers watch sexually explicit videos inside the individual booths, which have one-half or three-quarters length doors that swing open and can be locked from the inside with a sliding latch.

Undercover officers from the Minneapolis Police vice unit entered the store on various days during May, June and July of 1993. They observed numerous instances of indecent exposure, and solicitation to perform prostitution. Some of this conduct was directed at the officers, who arrested a number of bookstore customers for indecent conduct. Holmberg was charged by complaint with owning, operating or maintaining a disorderly house.

Holmberg moved to dismiss the complaint, arguing that the Minneapolis disorderly house ordinance, Minneapolis, Minn., Code of Ordinances § 385.170(b)(1), is unconstitutional. He also argued that the complaint failed to allege facts showing his knowledge or intent. The trial court denied the motion to dismiss the complaint. Shortly before trial, Holmberg renewed his motion to dismiss, and moved to suppress items seized under two search warrants. These motions were all denied in a posttrial order.

The state presented the testimony of the vice squad undercover officers who entered the video booth area of the bookstore. The officers testified that, on various dates between May 18, 1993 and October 27, 1993, they witnessed acts of indecent exposure, solicitation for prostitution, and sex acts performed openly in the view of others. The officers testified there were cracks between the doors and door frames of the booths

making the interior of the booths easily visible to other patrons. The officers observed empty condom packages and what appeared to be used condoms on the floor.

Holmberg presented the testimony of several customers who were arrested but who testified they did not commit indecent conduct. Holmberg testified that he was unaware of the customers' behavior, but that he had taken several precautions against it, including the installation of the doors on the booths. He testified that he told the bookstore clerks to make periodic searches of the video booth area. The state presented photographs of signs posted in the area warning customers against prostitution and listing rules for the area.

The trial court did not allow Holmberg to testify about his personal review of, and reliance on, two Hennepin County court decisions from the early 1980s on enforcement of the indecent conduct ordinance in Minneapolis adult bookstores. The trial court allowed the state to present certified copies of the disorderly conduct convictions of the bookstore's customers as rebuttal evidence after one customer denied committing a sex act, and testified he pleaded guilty to indecent conduct rather than disorderly conduct.

## ISSUES

1. Did the trial court err in failing to suppress evidence seized under the two search warrants?

2. Did the court err in failing to dismiss the complaint for lack of probable cause?

3. Is the Minneapolis disorderly house ordinance unconstitutional?

4. Is the city collaterally estopped by the 1982 civil injunction from enforcing the ordinance?

5. Did the trial court abuse its discretion in its evidentiary rulings?

6. Did the trial court prejudicially err in instructing the jury?

## ANALYSIS

1. *Search Warrants*

Holmberg argues that the June 9 and June 24 search warrants were invalid be-

cause there is no authority to issue a search warrant to discover evidence of an ordinance violation. The search warrant statute itself, however, defines "crime" to include "all violations of municipal ordinances for which a misdemeanor sentence may be imposed." Minn.Stat. § 626.05, subd. 3 (1992). Search warrants historically have been issued for health and safety inspections by municipal inspectors. *See, e.g., Camara v. Municipal Court,* 387 U.S. 523, 534, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930 (1967) (holding that the Fourth Amendment requires the issuance of a search warrant before an administrative search can take place). Search warrants are valid to uncover evidence of ordinance violations carrying criminal penalties, such as the Minneapolis disorderly house ordinance under which Holmberg was convicted.

### 2. *Lack of Probable Cause*

Holmberg argues that the trial court erred in failing to dismiss the complaint for lack of probable cause. The state contends that Holmberg cannot raise this issue following a conviction. But the problem with Holmberg's probable cause argument is not that it is barred but that it is irrelevant. The standard for the sufficiency of the evidence to support a conviction is much higher than probable cause. *See, e.g., State ex rel. Hastings v. Bailey,* 263 Minn. 261, 266, 116 N.W.2d 548, 551 (1962) (noting that at a preliminary hearing, the state need not prove guilt beyond a reasonable doubt). If Holmberg could show on appeal that probable cause is lacking, he would necessarily prevail on a claim of insufficiency of the evidence. Even construing this argument as a challenge to the sufficiency of the evidence, it relies on the assumption that the terms of the 1982 *Henningsgard* injunction apply to this prosecution. This theory is discussed below.

### 3. *Constitutionality of the Ordinance*

Holmberg argues that the Minneapolis disorderly house ordinance infringes on the First Amendment freedom of association, violates due process, and, as construed in this case, violates the ex post facto clause.

The relevant part of the ordinance provides:

No person shall own, operate, manage, maintain or conduct a disorderly house, or invite or attempt to invite others to visit or remain in such disorderly house.

Minneapolis, Minn., Code of Ordinances § 385.170(b)(1) (1991). "Disorderly house" is defined as a "building, dwelling, establishment, premises or place where prohibited conduct occurs." Section 385.170(a)(5). "Prohibited conduct" is defined as follows:

Prohibited conduct shall mean activities occurring in violation of statutes or ordinances relating to any of the following:

a. Gambling;

b. Prostitution, acts relating thereto, or indecent conduct;

c. Sale or possession of controlled substances; or

d. Unlawful liquor sales.

*Id.,* § 385.170(a)(4) (1991).

Holmberg does not claim any of the "prohibited conduct" is expressive conduct covered by the First Amendment. His constitutional challenges are based on the lack of a requirement of knowledge or mental state.

#### a. *First Amendment Freedom of Association*

■ Holmberg argues that the Minneapolis disorderly house ordinance violates the First Amendment right to freedom of association. He contends that the ordinance punishes him for the conduct of his customers, without any requirement that he have any knowledge of, or intent to further, their activities. The state argues that there is no First Amendment issue involved and that sexual conduct in a bookstore is not "expressive conduct." *See Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 707, 106 S.Ct. 3172, 3177, 92 L.Ed.2d 568 (1986) (closure of adult bookstore for prostitution activity did not implicate First Amendment rights).

The federal courts in Minnesota have dealt with a similar claim. In *Hvamstad v. Suhler,* 727 F.Supp. 511, 516–18 (D.Minn.1989), *aff'd,* 915 F.2d 1218 (8th Cir.1990), the district court rejected a constitutional challenge brought by the owner of a "rap parlor"

against a nuisance statute allowing officials to close the building after a certain number of prostitution or other convictions. The court distinguished between the freedom of intimate association, based on general liberty notions, and the freedom of *expressive* association, based on the First Amendment. *Id.* at 516–17. The court noted that *Arcara* had disposed of any claim that a bookstore or similar business had any First Amendment interest in the indecent conduct of its customers. *Id.* at 518.

The Eighth Circuit in *Suhler* affirmed in a brief opinion noting that under *Arcara* there was no First Amendment claim. *Hvamstad v. Suhler*, 915 F.2d 1218, 1219 (8th Cir.1990). The court also noted:

> The first amendment does not bar otherwise valid health and nuisance laws that are not designed to regulate expressive conduct.

*Id.*

■ The Minneapolis disorderly house ordinance is a nuisance law. The ordinance imposes criminal penalties on an owner for operating a business in which "prohibited conduct" occurs. Knowledge is imputed from ownership of the business. The state need not establish an owner's intent in order to establish a criminal nuisance law violation. *State v. Lloyd A. Fry Roofing Co.*, 310 Minn. 535, 246 N.W.2d 692, 695 (1976). If the Minneapolis ordinance were directed at regulating expressive conduct, it would have to adhere to more narrowly-drawn procedures than an ordinary nuisance law. *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 315–16, 100 S.Ct. 1156, 1161, 63 L.Ed.2d 413 (1980). Holmberg, however, has not shown the ordinance is directed at expressive conduct. *See Arcara*, 478 U.S. at 705, 106 S.Ct. at 3176 ("[T]he sexual activity carried on in this case manifests absolutely no element of protected expression."). He has not shown, therefore, that the lack of a knowledge requirement is relevant to any First Amendment claim.

Holmberg's freedom of association argument relies heavily on *State v. Mercherson*, 438 N.W.2d 707 (Minn.App.1989), in which this court held that the Minneapolis disorderly house ordinance was unconstitutionally overbroad and infringed on the First Amendment freedom of association. *Id.* at 710. In *Mercherson*, the defendant visited an apartment where drugs were allegedly being sold. *Id.* at 708. This court affirmed the trial court's ruling that the ordinance, which prohibited visiting a disorderly house, was unconstitutional because it did not require knowledge or intent. *Id.* at 710. This court also noted that the ordinance "infringes on innocent associations, where a party has no intent to commit any illegal act." *Id.* at 709.

That part of the ordinance under which Holmberg was convicted does not penalize a building owner for the people he associates with, but for the activities conducted on his premises. This part of the ordinance lacks a knowledge or intent requirement, as the prohibition against visiting a disorderly house did in *Mercherson*. But the owner's knowledge is inferred from ownership of the business and the condition of the premises, as in most nuisance laws, not from "general reputation" of a building owned by another, as in *Mercherson*. *Mercherson*, 438 N.W.2d at 710.

■ Holmberg presents a facial challenge to the ordinance despite strong evidence that it was properly applied to him. A facial challenge is permitted only where a regulation infringes on freedom of expression and the overbreadth is "substantial." *State v. Castellano*, 506 N.W.2d 641, 644–45 (Minn. App.1993). The Minneapolis ordinance could conceivably be used to prosecute a business owner for a single act of indecent conduct on the business premises. *See* Minneapolis, Minn., Code of Ordinances § 385.170 (1991) (no requirement of owner knowledge or pattern of activity). But because Holmberg has not established that the ordinance infringes on his First Amendment interests, he must show that the ordinance is unconstitutional as applied to his own business. *See State v. Kager*, 382 N.W.2d 287, 289 (Minn.App.1986), *pet. for rev. denied* (Minn. Apr. 24, 1986) ("He must show that the statute lacks specificity as to his own behavior and not some hypothetical situation.").

Although the *Mercherson* court applied an overbreadth analysis without showing any

impact on the First Amendment freedom of expressive association, the court discussed a number of constitutionally protected activities that could conceivably be infringed. *Mercherson*, 438 N.W.2d at 709. Holmberg cannot point to any similar constitutional implications. The ordinance does not penalize Holmberg for the people he associates with, but for the activities conducted on his premises. It does not violate the First Amendment and is not unconstitutionally overbroad.

### b. *Due Process*

■ Holmberg argues that the ordinance violates due process because it imposes criminal penalties without requiring intent, and thereby imposes vicarious criminal liability. *State v. Guminga*, 395 N.W.2d 344, 345–46 (Minn.1986) (holding that due process did not permit prosecution of restaurant owner for employee's serving liquor to minor).

Vicarious criminal liability is liability imposed for the acts of another. *Id.* at 345. The Minneapolis ordinance imposes criminal penalties on a business or other property owner for the condition of his or her premises, as determined by the behavior occurring there. It does not make the acts of the owner's employee or customer the owner's acts. *Cf. id.* at 345–46 (statute made illegal sale "the act of the employer as well as that of the person actually making the sale"). No theory of vicarious liability is necessary to make an owner criminally liable for the condition of his or her premises under traditional nuisance analysis. The case Holmberg himself cites on strict liability offenses specifically allows such an extension of criminal liability for regulatory offenses such as health and safety violations. *Morissette v. United States*, 342 U.S. 246, 259–60, 72 S.Ct. 240, 248, 96 L.Ed. 288 (1952).

### c. *Ex Post Facto Clause*

■ Holmberg argues that this prosecution violates the ex post facto clause because a judicial construction of the ordinance is being applied retroactively to his conduct. The trial court instructed the jury that it had to find that Holmberg knew of his customers' illegal activities and either encouraged or tolerated them.

The ex post facto clause has been applied to judicial rulings expanding criminal liability, particularly in the area of obscenity. *See Marks v. United States*, 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977); *State v. Welke*, 298 Minn. 402, 411, 216 N.W.2d 641, 648 (1974) (noting that defendant lacked fair notice that materials he sold would be judicially construed as "obscene"). But the district court's jury instruction does not expand liability under the ordinance, it restricts it. Moreover, the disorderly house ordinance does not depend on any terms, such as "obscenity," that rely on future judicial construction to give them meaning.

Courts may interpret criminal statutes narrowly so as to save them from constitutional challenge. *See, e.g., State v. Krawsky*, 426 N.W.2d 875, 877 (Minn.1988) (interpreting the obstructing legal process statute as directed solely at physical acts to preserve it from overbreadth challenge). Holmberg cites no authority holding that such narrowing constructions violate ex post facto merely because they may preserve a statute against constitutional challenge.

### 4. *Collateral Estoppel*

■ Holmberg argues that the city may not enforce the disorderly house ordinance because its prosecution violates the terms of the 1982 *Henningsgard v. Bouza* civil injunction.

There is a general reluctance to enjoin the enforcement of criminal ordinances and laws absent compelling circumstances. *Alexander v. Severson*, 408 N.W.2d 195, 199 (Minn. 1987), *pet. for rev. denied* (Minn. Aug. 19, 1987). Such injunctions may be appropriate in First Amendment cases "when the threatened prosecution chilled the exercise of protected expression." *Alexander v. Thornburgh*, 713 F.Supp. 1278, 1287 (D.Minn.), *aff'd*, 881 F.2d 1081 (8th Cir.1989). As noted above, Holmberg does not have a claim that his First Amendment expressive conduct or freedom of association is being infringed.

To give continued effect to the injunction, through collateral estoppel, despite changes in the parties, in the conditions present in

the bookstores, and in the terms of the ordinance itself, significantly hampers the city's enforcement of its ordinances. *See Severson,* 408 N.W.2d at 199 (impairment of state's substantial interest in criminal enforcement weighs against enjoining criminal prosecution). We conclude that the city is not collaterally estopped by the 1982 injunction.

### 5. *Evidentiary Rulings*

Holmberg argues that the trial court prejudicially erred in excluding defense evidence of Holmberg's reliance on *Henningsgard* and other district court decisions. Holmberg argues also that the court abused its discretion in admitting evidence of his customers' misdemeanor convictions.

■ A defendant may claim in defense to a criminal charge that he acted in reliance on official actions or pronouncements regarding his conduct. *See, e.g., United States v. Albertini,* 830 F.2d 985, 990 (9th Cir.1987) (holding that trespass defendant had right to rely on appellate court's ruling, not yet reversed, holding in his own case that his leafletting activities were legal). Holmberg never received an official ruling as to his bookstore's compliance with the ordinance. He cannot rely solely on his own research into *Henningsgard* and other court rulings involving other bookstores. *See United States v. Brady,* 710 F.Supp. 290, 294 (D.Colo.1989) (noting that defendant cannot claim a defense based solely on his own research). Holmberg's proposed evidence would necessarily involve the legal issue of how the court rulings involving other parties applied to him. To present this evidence to the jury would inevitably confuse it with legal issues it would not be competent to resolve. *Cf. State, v. Zimmer,* 487 N.W.2d 886, 888 (Minn.1992) (noting that admission of canon law, without expert testimony, would have forced court and jury to interpret unfamiliar canons in deciding issues), *cert. denied,* — U.S. —, 113 S.Ct. 973, 122 L.Ed.2d 127 (1993).

■ Holmberg claims the trial court erred in admitting the misdemeanor convictions of his customers. *See* Minn.R.Evid. 803(22) (felony judgments of conviction admissible). This evidence was offered as rebuttal evidence after one customer denied committing a sexual act. It was cumulative to other evidence that the public sex acts and other indecent conduct did occur in the video booth area. Indeed, Holmberg did not significantly contest the police officers' testimony that they viewed such conduct. He claimed only that he had no knowledge of these activities. The admission of the misdemeanor convictions was, if error, harmless error.

### · 6. *Jury Instructions*

Holmberg argues that the trial court abused its discretion in rejecting his proposed instructions on the *"Henningsgard"* defense and on the element of knowledge. Because Holmberg was not entitled to present a *"Henningsgard"* defense, as discussed above, he was not entitled to that proposed instruction.

Holmberg requested a jury instruction requiring the state to prove that he had knowledge of the acts of indecent conduct and that he specifically intended to "further and assist" those acts.

The refusal to give a requested jury instruction lies within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Blasus,* 445 N.W.2d 535, 542 (Minn.1989). An instruction need not be given if it is not warranted by either the facts or the relevant case law. *State v. Ruud,* 259 N.W.2d 567, 578–79 (Minn.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978).

Holmberg presents no support for his "specific intent" instruction. Specific intent is not an element of the ordinance violation. *See* Minneapolis, Minn., Code of Ordinances § 385.170(b)(1). *Mercherson,* although it uses the term "specific knowledge," 438 N.W.2d at 710, does not imply that a specific intent to further illegal activity is required. The substance of Holmberg's requested language imposing "knowledge" as an element of the offense was given by the trial court. We conclude that the trial court did not abuse its discretion in rejecting the proposed instructions.

## · DECISION

The trial court did not err in failing to suppress evidence seized under the search warrants, nor in declining to dismiss the complaint for lack of probable cause. The Minneapolis disorderly conduct ordinance is not unconstitutional, nor is the city collaterally estopped by a 1982 civil injunction from enforcing it. The trial court did not abuse its discretion in its evidentiary rulings or in instructing the jury.

**Affirmed.**