**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1579**

State of Minnesota,
Respondent,

vs.

Thomas Joseph Shane,
Appellant.

**Filed July 5, 2016**
**Affirmed**
**Cleary, Chief Judge**

Goodhue County District Court
File No. 25-CR-14-2179

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Stephen N. Betcher, Goodhue County Attorney, Christopher J. Schrader, Assistant County Attorney, Red Wing, Minnesota (for respondent)

Alexander W. Rogosheske, Rogosheske, Rogosheske & Atkins, PLLC, South St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Halbrooks, Judge; and Jesson, Judge.

**S Y L L A B U S**

Ballot destruction, as defined by Minn. Stat. § 204C.06, subd. 4(b) (2012), is a general-intent crime.

## OPINION

**CLEARY**, Chief Judge

Appellant Thomas Joseph Shane challenges his conviction of damaging, defacing or mutilating a ballot (ballot destruction) under Minn. Stat. § 204C.06, subd. 4(b). He argues that the district court erred by ruling that ballot destruction is a general-intent crime, by refusing to instruct the jury regarding the defenses of mistake of law and reliance on an official government statement, and by ruling on jury instructions after the close of evidence. We affirm.

## FACTS

Appellant is an electrical contractor residing in Goodhue County. He was elected as a township supervisor for Wanamingo, Minnesota. Wanamingo held a township meeting on March 11, 2014 to elect a township supervisor. The election procedures followed by the township for that election were described by the district court as "at best, rather unorthodox." Nonetheless, the election was valid, and there is no claim of fraud or challenge to the result. However, the ballots from this election were not preserved according to state law.

During the township meeting, a former township clerk, James Foss, suggested that the ballots be destroyed. Appellant volunteered to burn the ballots. The current township clerk, Jessica Page, objected, stating that the ballots needed to be kept for some amount of time. There was inconsistent testimony regarding whether Len Feuling, another township supervisor and the head election judge, also said that the ballots had to be kept.

2

After the initial exchange regarding what to do with the ballots, the township meeting was adjourned and the canvassing board convened a meeting to ensure the validity of ballots and to account for any potential problems with the vote counting. This meeting included appellant, Feuling, and Page. Page testified that at the canvassing-board meeting, appellant stated he would take the ballots home and burn them. Page testified that she responded, "No. You can't keep them. They go in the box over there on the floor." Appellant testified that he then asked Feuling what to do with the ballots, and Feuling said, "As far as I'm concerned, you can get rid of them. I'm going home. I'm shot." Appellant took the ballots home and stored them in his garage.

After hearing that appellant intended to burn the ballots, both Rae Rusnak, the losing candidate, and Page filed election-law complaints. Appellant continued to store the ballots in his garage until approximately Memorial Day, when he burned them. On June 18, 2014, a state investigator met with appellant and learned that he had burned the ballots. State law requires that ballots be retained for at least 22 months. Minn. Stat. § 204B.40 (2012). Appellant testified that until he was contacted by the state investigator in June, he did not know of the ballot-retention law or that burning the ballots violated the law.

On September 16, 2014, appellant was charged with one count of ballot destruction under Minn. Stat. § 204C.06, subd. 4(b), and one count of misconduct of a public officer under Minn. Stat. § 609.43, subd. 2 (2012). The case went to trial in July 2015.

At the close of testimony, the state made a motion in limine to exclude any jury instructions suggesting that mistake of law or governmental estoppel could be a defense to Count I – ballot destruction. Appellant's counsel argued that he had based his trial strategy,

3

including the decision for appellant to testify, on the belief that ballot destruction is a specific-intent crime and therefore these defenses would be permitted. The court granted the state's motion. The court instructed appellant that he could not argue these defenses with regard to Count I. The district court permitted such instructions for Count II – misconduct of a public officer.

The jury found appellant guilty of Count I and not guilty of Count II. On September 25, 2015, the court entered a departure report stating that it was sentencing appellant for a gross misdemeanor, under Minn. Stat. § 609.13, subd. 1(1) (2014), rather than a felony conviction, because his crime was less onerous than usual.

Appellant filed motions seeking to vacate the conviction, have judgment entered in his favor, be granted a new trial or, alternatively, have his sentence stayed pending appeal. The district court reserved appellant's motion to stay sentencing and denied his other motions. Appellant's arguments primarily related to his contention that the district court incorrectly ruled that ballot destruction is a general-intent crime and denied his defenses. This appeal followed.

## ISSUES

I.      Did the district court err by ruling that ballot destruction is a general-intent crime?

II.     Did the district court abuse its discretion by denying appellant's request to instruct the jury regarding a defense of mistake of law?

III.    Did the district court abuse its discretion by denying appellant's request to instruct the jury regarding a defense of reliance on an official government statement?

4

IV.	Did the district court abuse its discretion by making an untimely ruling on jury instructions?

## ANALYSIS

## I.

Appellant argues that the district court erred by ruling that ballot destruction as defined by Minn. Stat. § 204C.06, subd. 4(b), is a general-intent crime. The interpretation of a statute is a legal question this court reviews de novo. *State v. Ndikum*, 815 N.W.2d 816, 818 (Minn. 2012).

"An analysis of a statute must begin with a careful and close examination of the statutory language." *State v. Loge*, 608 N.W.2d 152, 155 (Minn. 2000). The purpose of statutory interpretation is "to ascertain and effectuate legislative intent." *Id.* We interpret a statute "in a manner that renders no part of it meaningless." *State v. Wilson*, 830 N.W.2d 849, 853 (Minn. 2013). If the meaning of the statute is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16 (2014).

The determination of whether Minn. Stat. § 204C.06, subd. 4 (2012), is a general-intent or specific-intent law presents an issue of first impression for Minnesota appellate courts. The statute provides:

> No individual shall intentionally:
>
> > (a) remove from a polling place any election file or election register, except as authorized by law;
> > (b) damage, deface, or mutilate any ballot, election file, or election register or any item of information contained on it, except as authorized by law; or

(c) add anything to a ballot, election file, or election register, except as authorized by law.

A violation of this subdivision is a felony.

Minn. Stat. § 204C.06, subd. 4.

Minnesota's criminal code defines the terms that the legislature uses to establish the mental state required for a crime.

> "Intentionally" means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result. In addition . . . the actor must have knowledge of those facts which are necessary to make the actor's conduct criminal and which are set forth after the word "intentionally."

Minn. Stat. § 609.02, subd. 9(3) (2014).

"When a statute simply prohibits a person from intentionally engaging in the prohibited conduct, the crime is considered a general-intent crime." *State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012). "Unlike a general-intent crime, a specific-intent crime requires an intent to cause a particular result." *Id.* (quotation omitted). "The phrase 'with intent to' is commonly used by the Legislature to express a specific-intent requirement." *Id.*

Appellant was convicted under the ballot destruction statute which provides, "No individual shall intentionally . . . damage, deface, or mutilate any ballot, election file, or election register or any item of information contained on it, except as authorized by law." Minn. Stat. § 204C.06, subd. 4(b). The statute criminalizes intentionally taking the prohibited action, including damaging a ballot. This organization and use of "intentionally" indicates this is a general-intent crime.

6

This interpretation is further evidenced by a comparison between the statute defining ballot destruction and the statute defining misconduct of a public officer, Minn. Stat. § 609.43, subd. 2, under which appellant was charged and acquitted on Count II. This statute provides that public officers commit a crime if, in their official capacity, they commit "an act knowing it is in excess of lawful authority or knowing it is forbidden by law to be done in that capacity." Minn. Stat. § 609.43, subd. 2. This law creates a specific-intent crime by requiring that individuals know that their conduct is unlawful. In contrast, Minn. Stat. § 204C.06, subd. 4(b), requires only that individuals "intentionally" destroy a ballot, and the provision contains no comparable language requiring knowledge that the action is unlawful.

If the legislature intended ballot destruction to require specific knowledge of the law, it could have phrased the statute as, for instance, "No individual shall intentionally . . . damage, deface, or mutilate any ballot, election file, or election register or any item of information contained on it, *with intent to violate the law*." *Cf. Fleck*, 810 N.W.2d at 309 ("If the Legislature intended to require an additional, special mental element, it could have defined assault-harm as 'an act done with the intent to cause bodily harm to another.'"). It did not do so. Ballot destruction, as defined by Minn. Stat. § 204C.06, subd. 4(b), is a general-intent crime, and the district court did not err in this conclusion.

## II.

Because the district court ruled that ballot destruction is a general-intent crime, the court denied appellant's request to provide instructions to the jury regarding a mistake-of-law defense to Count I. We review the district court's refusal to give a requested jury

7

instruction for an abuse of discretion. *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996). We focus on whether the refusal resulted in error. *State v. Kuhnau*, 622 N.W.2d 552, 555 (Minn. 2001). A criminal defendant "is entitled to an instruction on his theory of the case if there is evidence to support it." *State v. Lopez*, 587 N.W.2d 26, 28 (Minn. 1998) (quotation omitted).

Generally, a mistake of the law is not a defense. *State v. Jacobson*, 697 N.W.2d 610, 615 (Minn. 2005). However, "mistake of law can be a defense when the elements of the offense require an intent to violate a statute because in such a case the mistake of law negat[es] the existence of a mental state essential to the crime charged." *State v. Watkins*, 840 N.W.2d 21, 30 (Minn. 2013) (alteration in original) (quotation omitted).

Appellant concedes that a mistake of law is generally not a defense to a general-intent crime, but raises two arguments that the court abused its discretion by declining to instruct the jury on mistake of law. First, he argues that because ballot destruction is a specific-intent crime, the defense of mistake of law should be available to him. As analyzed above, Minn. Stat. § 204C.06, subd. 4(b), defines ballot destruction as a general-intent crime, so this argument fails.

Second, appellant argues that the reasoning for why a mistake of law is typically not a defense to a general-intent crime should not apply in this case. He argues that "election law procedures would not be part of the 'usual activities' that most citizens would be acquainted with, or expected to know."

This argument is unavailing. "It is a deeply rooted concept of our jurisprudence that ignorance of the law is no excuse." *State v. King*, 257 N.W.2d 693, 697 (Minn. 1977); *see*

*also State v. Welch*, 21 Minn. 22, 26-27 (1874) (applying this principle in election law, holding that voluntary intoxication is not a defense to a charge of voting more than once in a local election). Moreover, as a township supervisor and a member of the canvassing board, appellant was expected to participate in local elections. Although he was not a trained election official, appellant's participation was not so far outside his "usual activities" that he should be immune from the generally applicable requirement that citizens be responsible for knowing the law. The district court did not abuse its discretion by refusing to instruct the jury on the mistake-of-law defense.

**III.**

The district court also denied appellant's request to instruct the jury regarding a defense of reliance on an official government statement. It concluded that this defense could apply only to a specific-intent crime. Appellant argues that this decision was an abuse of discretion.

We review the district court's refusal to give a requested jury instruction for abuse of discretion. *Cole*, 542 N.W.2d at 50. We focus on whether the refusal resulted in error. *Kuhnau*, 622 N.W.2d at 555. A criminal defendant "is entitled to an instruction on his theory of the case if there is evidence to support it." *Lopez*, 587 N.W.2d at 28 (quotation omitted). "The court abuses its discretion if it misinterprets or misapplies the law." *Johnson v. State*, 733 N.W.2d 834, 836 (Minn. App. 2007), *review denied* (Minn. Sept. 18, 2007).

A defendant may defend against a criminal charge by claiming "that he acted in reliance on official actions or pronouncements regarding his conduct." *State v. Holmberg*,

527 N.W.2d 100, 106 (Minn. App. 1995), *review denied* (Minn. Mar. 21, 1995); *see also State v. McKown*, 475 N.W.2d 63, 68 (Minn. 1991) (noting "the long-established rule that a government may not officially inform an individual that certain conduct is permitted and then prosecute the individual for engaging in that same conduct"); *Whitten v. State*, 690 N.W.2d 561, 564 (Minn. App. 2005) (recognizing that Minnesota courts follow the rule set out by *McKown*). This defense is generally called "reliance on official government actions or statements," but has also less commonly been called "government estoppel," a term used by the parties in this case. *Compare Whitten*, 690 N.W.2d at 564 (using one variant of the more common phrasing), *with Naegele Outdoor Advert., Inc. v. Minneapolis Cmty. Dev. Agency*, 551 N.W.2d 235, 237 (Minn. App. 1996) (discussing the limited circumstances in which estoppel is invoked against the government). Where a government official advises a person that conduct is legal, and that official "appeared to be the agent of the State in a position to give such assurances," a person may not be prosecuted for relying in good faith on that advice. *Raley v. Ohio*, 360 U.S. 423, 437-39, 79 S. Ct. 1257, 1266-67 (1959). Such a prosecution violates the defendant's due process rights. *Whitten*, 690 N.W.2d at 565.

The district court ruled that this defense could apply only to specific-intent crimes. This conclusion is erroneous. Reliance on an official government statement may be a defense to a general-intent crime. S*ee, e.g.*, *Whitten*, 690 N.W.2d at 565-66 (reversing defendant's conviction for general-intent crime of unlawful possession of firearm where he relied on district court's statement that he was "restored to all civil rights" after discharge from probation); *State v. Akers*, 636 N.W.2d 841, 844 (Minn. App. 2001) (finding that police lacked probable cause to suspect that defendant had committed general-

10

intent zoning violation where he relied on letter from county zoning office stating defendant had until certain future date to comply with ordinance).

Despite this erroneous statement of law, appellant is not entitled to reversal unless the district court abused its discretion by refusing to instruct the jury regarding this defense. "In deciding whether an instruction is warranted, we, like the trial court, must view the evidence in the light most favorable to the defendant." *State v. Radke*, 821 N.W.2d 316, 328 (Minn. 2012). A defendant must make a prima facie factual showing of the elements of a defense to be entitled to an instruction on that theory of the case. *State v. Brodie*, 532 N.W.2d 557, 557 (Minn. 1995).

Appellant is entitled to a jury instruction on this defense only if he presented a prima facie case that he relied on an official government source that advised him it was legal to burn the ballots. The government's failure to inform a person of a law affecting them is not sufficient to invoke this defense. *State v. Grillo*, 661 N.W.2d 641, 645 (Minn. App. 2003), *review denied* (Minn. Aug. 5, 2003). The government must make an affirmative statement or action. *Whitten*, 690 N.W.2d at 565-66.

Appellant testified to relevant statements from three sources: Foss, an untrained ballot counter and former township clerk; Page, the township clerk responsible for the election; and Feuling, a township supervisor and trained election judge. Appellant testified that at the conclusion of the township meeting, Foss stated either that the ballots should be "burned" or "destroyed." He also testified that, either at the township meeting or at the meeting of the canvassing board afterwards, Page said regarding the ballots, "We have to keep them . . . [b]ut I don't know for how long." Finally, appellant testified that at the

11

canvassing board meeting, he asked Feuling how to handle the ballots and Feuling responded by saying "As far as I'm concerned, you can get rid of them. I'm going home. I'm shot."

Even accepting appellant's testimony regarding the events of that night, these statements do not constitute official advice that his future destruction of the ballots would be lawful. Foss expressed support for destroying the ballots, but Page objected. Although an official government statement need not be uncontroverted, here it was disputed in the moment. Feuling's statement expressed only spontaneous, informal support for destroying the ballots. According to his own testimony, appellant received conflicting, informal statements from two government officials, Page and Feuling, and one other citizen, Foss. Even considering the facts in the light most favorable to appellant, no reasonable jury could conclude that appellant acted in reliance on the advice of an official government source in a position to give assurances that his actions were legal. The district court did not abuse its discretion by denying an instruction regarding the defense of reliance on an official government statement.

**IV.**

Finally, appellant argues that the district court abused its discretion by ruling on the issue of jury instructions after the close of testimony. We apply an abuse-of-discretion standard to a district court's rulings regarding jury instructions. *State v. Koppi*, 798 N.W.2d 358, 361 (Minn. 2011).

The rules governing jury instructions in criminal trials provide: "Any party may request specific jury instructions at or before the close of evidence." Minn. R. Crim. P.

26.03, subd. 19(1). "The court may instruct the jury before or after argument." *Id.*, subd. 19(5). "The court may, and on request must, tell the parties on the record before the arguments to the jury what instructions will be given to the jury including a ruling on the requests made by any party." *Id.*, subd. 19(2).

The district court ruled on jury instructions before closing arguments, as permitted by the rules. Appellant contends that the district court was "on notice" that his proposed instructions were central to his case and therefore should have made this ruling earlier in the trial. However, he has cited no caselaw or statute that indicates the district court's ruling was untimely. The only legal citation in the relevant section of appellant's brief is to a case establishing that a criminal defendant has the right to present a complete defense. *See State v. Richards*, 495 N.W.2d 187, 194 (Minn. 1992) (describing a defendant's constitutional right to present a complete defense). The district court did not abuse its discretion by ruling on the jury instructions after the close of testimony.

## DECISION

Because ballot destruction, as defined by Minn. Stat. § 204C.06, subd. 4(b), is a general-intent crime, the district court did not abuse its discretion by refusing to instruct the jury regarding the defense of mistake of law. Although the defense of reliance on an official government statement can apply to general-intent crimes, the district court did not abuse its discretion by refusing to instruct the jury regarding this defense because appellant did not present evidence entitling him to such an instruction.

**Affirmed.**

13